WARREN L. MAYNARD *vs.* JOHN JAMES ET AL.

Second Judicial District, Norwich, April Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued April 30th—decided June 13th, 1929.

*Charles V. James,* with whom, on the brief, were *Arthur M. Brown* and *Virtume P. A. Quinn,* for the appellants (defendants).

*Arthur F. Libby,* for the appellee (plaintiff).

MALTBIE, J. The defendants operate a garage in Norwich. The entrance to it consists of a covered driveway about twenty feet long and after cars have been washed in the garage it is the custom to leave them in this driveway to dry off. The plaintiff left his car in the garage to be washed. He was given by the foreman in charge of it a receipt which he received but did not read and which was as follows:

"Commercial Garage
Tel. 274.

Norwich                                             Conn.
                    License No.
                                         Date Recd.
No. 8097
This is a receipt for your              and must
be presented at office.
All property at owner's risk.
Not responsible for articles left loose in car."

Plaintiff's car was washed on the washstand inside the garage by a helper employed there and when it was finished the foreman in charge directed him to

move it from the washstand and leave it in the driveway to dry. The helper did move the car into the driveway, but when a little later the foreman looked for him he did not find him and did discover that the car was missing. Shortly thereafter he was informed that the car, driven by the helper, had been wrecked by being driven against a wall and telephone pole beside a street at a point about a mile from the garage. The helper had been seen driving it in the street some half mile from the garage at a speed of about twenty-five miles per hour, and again immediately before the accident, then operating it at a very high rate of speed. The trial court held the defendants liable for the damage to the car by the collision and they have appealed.

The argument of the defendants is largely based upon the thesis that they are not liable for the negligence of the helper because at the time of the accident he was not acting within the scope of his employment. However that may be, their contention overlooks a clear breach of duty which fastens an unquestionable liability upon them. One of the bases of recovery stated in the complaint is that the defendants did not regard their undertaking to store and safely keep the car for the plaintiff and the trial court states as one of its conclusions that they did not perform this obligation. When the plaintiff left the car in the garage the defendants, as bailees for hire, assumed the obligation not only to use due care in the performance of the services required, but to keep it in their garage or other appropriate place ready for redelivery to the plaintiff when he should come for it. *Bradley* v. *Cunningham,* 61 Conn. 485, 496, 23 Atl. 932. The driving of the car out of the driveway into the street and its subsequent operation was a wholly unauthorized use which, had the defendants done it themselves, certainly would have constituted a clear

breach of duty. "A bailee is liable in an action of tort for an injury to property bailed, occurring during a use of it by him, or by others with his consent, which was neither expressly nor impliedly authorized by the contract of bailment, even though such injury was the result of accident and not of negligence in the manner in which the property was used." *Palmer* v. *Mayo,* 80 Conn. 353, 356, 68 Atl. 369. This duty of the defendants was contractual in its nature; it required performance, and while no doubt they might delegate that performance to another, for a breach of it, whether by themselves of by that other, they would be liable. *McElligott* v. *Randolph,* 61 Conn. 157, 161, 22 Atl. 1094; *Nichols* v. *Hubbell,* 92 Conn. 611, 619, 103 Atl. 835; *Evans* v. *Williams,* 232 Ill. App. 439, 443; 2 Mechem on Agency (2d Ed.) § 1931 *et seq.;* Wood on Master & Servant (2d Ed) p. 644.

The legal situation is so well summed up in *Corbett* v. *Smeraldo,* 91 N.J.L. 29, 30, 102 Atl. 889, that we quote at some length: "We think this case does not involve the question of the master's responsibility for the tortious acts of his servant. It involves rather the question of the master's liability for breach of his own contract. . . . What were the terms of the contract? Those terms are rarely expressed at length. Much must be left to implication and be determined in accordance with the business usages and the customs of the times. . . . The jury could hardly avoid the inference that the automobile was left with the defendant for storage in his garage. Storage involved keeping the automobile there and not permitting it to go out without the plaintiff's authority. If the defendant chose to intrust that duty to his night man, he was liable, not because the night man was negligent, but because the defendant himself had been guilty of a breach of his contract of storage. . . .

There was a breach of the contract to store as soon as the automobile was taken out of the garage. For what subsequently happened, the defendant might or might not be liable under the rule of *respondeat superior.* . . . Perhaps this view would occur to the mind more readily if the subject of the bailment had been several automobiles, stored by a dealer awaiting sale, but the legal principle is the same in a case like the present, of a bailment of an automobile stored by the owner and to be held subject to his orders." See also *Evans* v. *Williams,* 232 Ill. App. 439.

The defendants claim that they are relieved from liability by the provision in the receipt given the plaintiff at the time he left the car at the garage, "all property at owner's risk." The trial court held that this receipt was merely a token for the identification of the car and did not constitute a contract. Much the same principle applies in the situation before us as arises where the question is whether terms and conditions printed upon letterheads or contract forms, not referred to in the body of the agreement, are to be regarded as a part of the contract, and in relation to such a question we said: "It must, after all, be determined upon the principle that one party can insist only upon such terms as are so set forth and so related to the writing and the subject-matter of the contract as fairly to manifest to the other party an intent that they are to be obligatory upon him; fair dealing to him, upon the assumption that he will act with reasonable caution, must be the test; and largely each case must stand by itself. 1 Williston on Contracts, § 90d." *Boston Lumber Co.* v. *Pendleton Bros., Inc.,* 102 Conn. 626, 631, 129 Atl. 782. The receipt was apparently handed to the plaintiff in a very casual way and he took it without reading it. The legal situation so arising is very aptly described by what the Court of

Appeals in New York says in *Madan* v. *Sherard,* 73 N. Y. 329, 334, in regard to a baggage check containing provisions limiting the liability of the carrier. "The decision in *Blossom* v. *Dodd* [43 N. Y. 264, 270], is an authority that no such contract arises in law from the acceptance of a receipt under the circumstances of this case. They do not justify the inference or implication that the plaintiff assented to be bound by the special contract contained in the receipt. There was no explanation of the contents of the paper; no conversation indicating that the trunk was to be carried on special terms, and no opportunity afforded to the plaintiff to assent to or dissent from the alleged contract. To infer, under the circumstances, an assent on his part to a contract exempting the carrier absolutely from responsibility for loss in certain cases, and limiting his liability in any case to $100, including cases of loss by the carrier's own negligence, would be making an inference contrary to the natural import of the transaction. The plaintiff, on receiving the paper, had, from the nature and circumstances of the transaction, a right to regard it as designed, simply as a voucher to enable him to follow and identify the property; and if he had no notice that it was intended to subserve any other purpose, or that it embodied the terms of a special contract, his omission to read it was not *per se* negligence." Even in those jurisdictions where there is a presumption that the person receiving a baggage check containing limitations upon the liability of the carrier assents to them, it is generally held that the presumption is rebutted by evidence that the limitations were not called to his attention and he did not in fact become aware of them. *Hill* v. *Adams Express Co.,* 82 N.J.L. 373, 376, 81 Atl. 859; 10 Corpus Juris, 142. Indeed, in the instant case, it seems highly prob-

able that the defendants themselves had no thought of creating a contractual obligation by the handing of the receipt to the plaintiff, both because of the very casual way in which it was apparently done and of the failure to fill out the blank spaces in it, and also because of the unlikelihood that they would want to hamper their business by an effort to impose upon prospective customers a limitation of liability which purports to free them from the entire risk of injury or loss, even from their own misconduct. We cannot find error in the ruling of the trial court as to the effect of the receipt.

The ground upon which the liability of the defendants is sustained makes immaterial the only ruling upon evidence of which complaint is made and there is no need to consider it.

There is no error.

In this opinion the other judges concurred.