## WEIS v. PAN-AMERICAN PETROLEUM CORPORATION

____

(January 27, 1930. Opinion and Decree.)
(February 17, 1930. Rehearing Granted. Quantum Only.)
(March 31, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

____

McCaleb & McCaleb, of New Orleans, attorneys for plaintiff, appellee.

Cobb & Jones and Herman M. Baginsky,. of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Plaintiff claims from defendant $1,500, alleging that he was damaged to that extent by reason of the wrecking of his automobile by one Wegmann, the night attendant employed by defendant at its Lee Circle service station and garage. Shortly before midnight, Weis drove his car into defendant's service station and garage and requested that it be greased and oiled. In accordance with a custom which he had followed at the same garage many times previously, he left the car with the night attendant, telling him that he would call for it in the morning.

During the night the car was taken out of the garage by the attendant Wegmann for his own purposes, and, while it was being operated by him, it was very seriously damaged. Next day, when Weis called for the car, he was told by Mr. Carruth, manager of the various service stations of defendant: "I am sorry, but our man got drunk last night and took your car out and wrecked it." Thereupon Mr. Weis, who, together with some of the employees of defendant company, went to the scene of the wreck and looked over the car, stated that he would have nothing to. do with the car, that it no longer belonged to him, and he refused to take charge of the wreckage.

Defendant contends that it is not liable because the employee, Wegmann, in taking the car out of the garage, was not acting within the scope of his employment, and because it (defendant), in employing Wegmann, had exercised due care in an effort to determine that he was a responsible, careful man. It thus appears that the contention of defendant is that, since Wegmann was employed to guard the car and to keep it in the garage, his act in taking it out was a departure from his duty to such an extent as to relieve the employer from liability for the results thereof. A case practically identical with this was decided by us on January 13, 1929, Gulf & Ship Island Railroad Co. vs. Sutter Motor Co. (No. 11645) 126 So. ——, and in that case we held the garage owner 'liable. We frankly confess, however, that the question presented is not so free from doubt as it appeared to us when we rendered the decision referred to. The present case has been most ably argued, and while we are still of the opinion that, under the circumstances presented, the garage owner is liable, the authorities cited in support of the contention of the defendant leave no room

for doubt that the question is a very close one.

The authorities to which we refer, and which are most confidently relied on by defendant, are Sanderson vs. Collins, First King's Bench Division, p. 628 (1904), and Firemen's Fund Ins. Co. vs. Schreiber, 150 Wis. 42, 135 N. W. 507, 518, 45 L. R. A. (N. S.) 314, Ann. Cas. 1913E, 823 (1912). In the Sanderson case the facts were as follows:

"The defendant sent his carriage to be repaired by the plaintiff, who was a coach-builder. The plaintiff lent a carriage of his own to the defendant for use while the repairs were going on. The coachman of the defendant, without his knowledge, took the plaintiff's carriage out for his own purposes, and while he was driving the carriage it was injured through his negligence. In an action to recover the cost of repairing it:

"Held, that as the coachman at the time when the injury was done to the carriage was not acting in the course of his employment, the defendant was not liable."

We believe, however, that the Sanderson case can be distinguished from the one now before us on the ground, as was stated in the dissenting opinion in Firemen's Fund Ins. Co. vs. Schreiber:

"It does not appear that the coachman was charged with any duty of caring for or protecting the machine during the night. It appears that when the coach was put in for the night the coach house was locked and the key left with the master or kept in the hall of his house."

In other words, since the coachman's duties in connection with the particular coach in question had entirely terminated, it was not within the scope of his employment to watch it or to take care of it, and when he feloniously extracted the key from the master's possession and by its use withdrew the coach from the coach house, by no

stretch of the imagination can it be said that he was doing anything even remotely connected with his duties as a servant of the master. In the Firemen's Fund Insurance Company case, to which we have referred, the facts were almost identical with those presented in the case before us. We believe, however, that one of the facts in that case will serve to distinguish it from the instant case, and that fact is that the garage attendant, one Flynn, had completed his day's work and had left the garage, and thereafter returned and took out the automobile in question.

It is quite true that the Supreme Court of Wisconsin, in that case, stated that it made no difference whether the taking out of the car occurred during Flynn's working hours, or after his term of employment was over, but, after so stating, the court said:

"* * * We are inclined to hold that Flynn returned to the garage for the machine, for an unlawful purpose formed after he had substantially quit service for the day, and so his act was outside the scope of his employment, even from respondent's viewpoint."

At any rate, we find ourselves unable to accept as sound the reasoning in the majority opinion, and feel that the minority opinion more nearly sets forth our views and is more in accord with logic.

In most of the cases cited in the majority opinion, the facts are clearly distinguishable. For instance, in nearly all of them it appears that the servant whose negligent or deliberate act caused the damage had stepped aside from the particular purpose for which he was employed, and was rendering services entirely dissociated from those he was employed to perform. We can well understand that a master who is a bailee is not responsible for the acts of

his servant where the servant performs a service in no way connected with the duties he is employed to perform. But here the duty the servant was employed to perform was to keep the automobile in the garage and see that it was not taken out improperly by any person. It is manifest that, in the performance of that duty, it was incumbent upon him to see that the machine was removed by no other person, and particularly was he under a duty not to remove it himself. In the majority opinion in the Firemen's Fund case, we find the following:

"Little time need be spent with the contention of appellant that the scope of Flynn's employment was confined to washing machines. He was the night-man at the garage. That is plain. One of the duties of night-men, evidently, is to wash machines. Necessarily, his duties required him to prevent unauthorized interference with machines, to open and close the place as necessary to accommodate customers in taking out or putting them up, and to assist if necessary. The difficulty was that he violated the very purpose of his employment, instead of acting within the scope of it, in committing the trespass. It is hard to conceive a more plain case of stepping completely aside from the scope of one's employment, within the rule stated, than occurred in this case."

It appears to us that the reasons given which we have just quoted are ample authority for a contrary holding, and we agree with the minority opinion, which, in discussing the language which we have just above quoted, states:

"'The opinion of the court seems to be grounded upon the proposition that the agent Flynn stepped aside from the scope of his duty in the circumstances causing the injury, and appears to ignore the proposition of law which makes the principal liable for the acts of the agent in violating the duty of the principal delegated to the agent to perform. An examination of the authorities will show that there is considerable confusion in the books as to when the principal may escape liability for the acts of the agent outside of· the scope of his duty, or, more accurately speaking, when the agent is outside the scope of his duty in the particular case. The confusion results from determining upon the facts of each case when the agent is and when he is not acting outside of the scope of his duty. In the case at bar, however, it would seem plain under the authorities heretofore cited, as well as numerous others which might be cited, that no serious question respecting the scope of Flynn's duty arises in this case, because the defendant, being a bailee for hire, and bound under his contract to protect the machine, and having delegated that duty to Flynn, was liable for the breach of that duty by him."

It seems to us clear that, since the bailee himself would have been responsible had he been personally in charge of the garage, and had he taken the car out himself and wrecked it, he cannot escape liability by showing that he delegated the duty of guarding the car to a servant and that the servant violated that duty. Many of the cases relied upon by defendant, and many cases cited in the two decisions to which we have referred, are instances in which it was held that the master was not liable to third persons who were injured by the servant unlawfully using the vehicle intrusted to the master by others. But those cases are based on the law of liability for tort, and not on the contractual liability of the bailee for hire.

In Corbett vs. Smeraldo, 91 N. J. Law, 29, 102 A. 889, the Supreme Court of New Jersey considered a case in which the facts were:

"An automobile was stored with the owner of a garage at an agreed price for care and storage. The defendant's night man in charge of the garage took the automobile out for his own purposes, and damaged it."

The court said:

"We think this case does not involve the question of the master's responsibility for the tortious acts of his servants. It involves rather the question of the master's liability for breach of his own contract."

In discussing the case of Firemen's Fund Ins. Co. vs. Schreiber, supra, the New Jersey court said:

"We are referred to Firemen's Fund Ins. Co. v. Schreiber, 150 Wis. 42, 135 N. W. 507, 45 L. R. A. (N. S.) 314, Ann. Cas. 1913E, 823, as holding a contrary view. The authority of that case is much shaken by the dissent of three out of seven judges, and by the fact that the lower court was reversed. Giving it, however, all the force that can legitimately be claimed, it is not in point. The case did not arise between bailor and bailee, and did not involve the terms of the contract. It was a suit by an insurance company against the bailee for the tort of his servant, and the defendant's liability was necessarily dependent on the application of the rule of respondeat superior."

In Vannatta vs. Tolliver, 82 Pa. Super. Ct. 546, the facts were: The plaintiff left his automobile with the defendant, a garage keeper, who agreed, for a consideration, to store and wash it. While the car was in defendant's garage, it was taken therefrom without the knowledge or consent of the plaintiff or defendant, but with the consent of the defendant's employee, the night man, who was in charge of the garage. The person who was permitted to take out the car caused it to collide with a truck and the car was damaged. The appellate court said:

"Starting with the premise that the defendant was bound to exercise reasonable and ordinary care, when he transferred this duty to his servant, he continued to be responsible for its proper exercise. A man cannot at the same time receive money which is to pay him for the performance of a duty and by shifting the responsibility to his servant, relieve himself from liability for a violation of the contract of bail-ment and the duties attending it. 'The only ground upon which a master can avoid liability for unauthorized and willful acts of a servant is that they are not done in the course of the servant's employment. When they are so done, the master is responsible for them. When not so done, yet if they directly cause a failure to perform a duty incumbent upon the master, he is responsible on that ground. Where the servant by his wrongful act deprives the plaintiff of the benefit of some act which it was the duty of the master to perform and performance of which is, in whole or in part, delegated to that servant, the master is responsible for the servant's act, no matter how willful, malicious and unauthorized it may be,' Sherman & Redfield, Law of Negligence, sections 150, 154, 6th Ed."

In a very similar case, McLain vs. Automobile Company, 72 W. Va. 738, 79 S. E. 731, 732, 48 L. R. A. (N. S.) 561, Am. Cas. 1915D, 956, the Supreme Court of West Virginia used the following language:

"The garage keeper can not leave the garage solely in the hands of a servant and then say that his negligence in letting a car out is beyond the scope of his employment. That would leave the garage without anyone to protect cars; in itself it would be want of reasonable care."

See Maynard vs. James, 109 Conn. 365, 146 A. 614.

In Wood on Master and Servant, sec. 321, p. 644, we find the following:

"When by contract, or by statute, the master is bound to do certain things, if he intrusts the performance of that duty to another, he becomes absolutely responsible for the manner in which the duty is performed, precisely the same as though he himself had performed it, and that without any reference to the question whether the servant was authorized to do the particular act; while, when the action sounds entirely in tort, lack of authority on the part of the servant avoids liability."

As was well said in Evans vs. Williams et al., 232 Ill. App. 439:

"The actual work of guarding the property may be delegated to an employee, and in the customary way of conducting many businesses this must be done during certain hours of the day, but the bailee is not thereby relieved from the personal obligation of his contract. An employee to whom such duty is delegated stands in the place of his employer and any negligence of this employee in protecting the property is the negligence of the employer, who can be made to respond in damages caused thereby. Any other rule would have a tendency to tempt a bailee to lessen his personal liability for damages by delegating to irresponsible servants the care of the property. This would be unjust to the bailor as increasing the risk to the property and decreasing his chances of obtaining adequate compensation for damages thereto. The primary and essential object of this contract of bailment was the safety of the automobile, and no rule of law should tend to diminish this by putting a premium on lack of personal attention."

Whatever may be the rule in other states —and our examination of the many authorities, some of which we have referred to, leads us to the view that, in the majority of other jurisdictions, the bailee is liable in such cases as this—certain it is that in this state there are no authorities to the effect that the bailee is not liable for the intentional wrongful conversion by his servant of an article intrusted to the servant, and we therefore feel at liberty to follow the rule laid down by us in Gulf & Ship Island Railroad Co. vs. Sutter Motor Co., supra, and to again hold that the bailee is liable if the act of his servant grows out of his employment, and is an act which, if properly done, would have been within the scope of his employment.

Here, if the servant had properly guarded the car, not only against others, but against his own illegal acts, he would have been acting within the scope of his employment and the damage would not have occurred. Since it was his duty to guard the car, his failure to do so was a breach of a duty within the scope of his employment.

Defendant complains of the action of the district court in refusing to allow it to submit evidence tending to show that it had been careful in the selection of the night attendant. In view of the opinion which we have expressed, that the master is liable for the actions of the night attendant done in connection with the work which he was employed to do, it is immaterial whether or not the master had exercised proper care in selecting the servant, and it therefore appears that the ruling of the trial court was correct on this point.

Our view that the defendant is liable makes it necessary that we now consider the question of the amount of damage caused to defendant.

The automobile new had cost $1,500, a little more than a year prior to the accident. It had run a little more than 10,000 miles. The original tires were on it. It had never been repaired, and was therefore probably in need of a more or less thorough overhauling. The trial court allowed plaintiff $1,200. In our judgment this is more than he is entitled to.

In these cases in which a used automobile is badly damaged, or in effect demolished, it is most difficult to arrive at a figure which will adequately compensate plaintiff without improperly and excessively burdening defendant.

In the first place, it is certain that plaintiff was not within his rights in abandon-

ing his property and in refusing to have anything more to do with it. It was his duty to use all reasonable means to protect the wreckage and to minimize his loss. It is evident that his loss could be minimized by saving the wreckage, either to the end that it might be traded in on a new car, or to the end that it might be sold for salvage purposes, or possibly with a view of repairing it and putting it back into the condition in which it. was prior to the accident. The evidence leaves us of the opinion that the automobile could have been put back into a condition very nearly resembling that in which it was prior to the occurrence, for not more than $534.75. It is true that some of the witnesses contend that a smaller sum would be sufficient to put it back into its prior condition, but we think that any doubt on this point should be resolved in favor of the plaintiff.

It should also be borne in mind, as was testified to by some of the witnesses, that a car so badly damaged as this was can never be put back into its prior condition. We therefore believe that the proper way to estimate the damage is to force plaintiff to take back his wrecked car and to award him a judgment for the amount which will undoubtedly cover the cost of making all repairs which are apparently necessary. In addition to this sum, we believe that he should be allowed some amount to compensate him for the depreciated value of his car resulting from the fact that a car so badly damaged can never be put back into its exact prior condition. We think

that a sum of $150 would about represent this additional depreciation. This means that plaintiff will recover $684.75, which he may or may not, at his option, expend in the repairing of his damaged car. If the wreckage is worth something between $100 and $200, as is testified to, the mathematical result will be that plaintiff will be the owner of wreckage valued at, say $150, and of $684.75 in cash, or $834.75, which, in view of the evidence as to the depreciation of automobiles after one year's use, is certainly as much as the car could have been sold for had it not been wrecked.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by reducing the amount thereof to $684.75, and as thus amended it is affirmed. Appellee to pay costs of this appeal.

## ON REHEARING

A careful review of the record convinces us that the amount awarded plaintiff in our former decree will not fully compensate him for his loss.

We have concluded that the items of $150, which we included as compensation for the depreciation suffered by reason of the fact that the automobile, even after all apparent damage has been repaired, will still not be as good as it was before the accident, should be increased to $350.

It is therefore ordered, adjudged and decreed that our former decree be amended so as to increase the amount therein awarded to $884.75, and, as thus amended, reinstated. Appellee to pay costs of appeal.