GEORGE WALTERS *vs.* UNITED STATES GARAGE, INC.

Cumberland.     Opinion, May 28, 1932.

*William B. Mahoney,*
*Theodore Gonya,* for plaintiff.
*Udell Bramson,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J. The defendant corporation, operating a public garage in Portland, through its general manager, entered into a contract with the plaintiff to store his Reo automobile. The contract, while general in its terms, provided for live storage at the rate of $8 a month and, expressly or impliedly, authorized removal and use of the car only by the owner or his designated employee. Sometime in the night of March 15, 1931, the defendant's night man, then in sole charge of the garage, without authority, took the plaintiff's car out for a pleasure ride and while intoxicated wrecked it.

At the trial of this action, in which the plaintiff declared in assumpsit for a breach of the defendant's contract to safely keep, store and redeliver the car in the same condition as when accepted, the presiding Justice, having denied the defendant's motion for a directed verdict, instructed the jury to find for the plaintiff and assess damages. After verdict for $600 the defendant filed its exceptions and a motion for a new trial on the ground that the damages were excessive.

The defendant corporation was a bailee for hire of the plaintiff's automobile and, under the implied provisions of its contract, bound to store, safely keep and redeliver the car to the owner on demand. Under the general law of bailment it was liable for damage to the car resulting from the negligence of any of its officers, agents or employees in the performance of any duty in regard to its care or custody which was within the general scope of their employment. *Eaton* v. *Lancaster*, 79 Me., 477 ; *Hanna* v. *Shaw*, 244 Mass., 57. Having left its night man in sole charge of its garage and delegated to him its duty of safely keeping the car, it was also liable under its contract, we think, for his personal use of and damage to the car, although it was unauthorized and outside the scope of his employ-

ment. This broader view of the law of bailments, although not universally accepted, is supported by an increasing weight of authority.

In Sherman & Redfield Law of Negligence, Sec. 150, 154, we read:

> "The only ground upon which a master can avoid liability for unauthorized and willful acts of a servant is that they are not done in the course of the servant's employment. When they are so done, the master is responsible for them. When not so done, yet if they directly cause a failure to perform a duty incumbent upon the master, he is responsible on that ground. ... Where the servant by his wrongful act deprives the plaintiff of the benefit of some act which it was the duty of the master to perform and performance of which is, in whole or in part, delegated to that servant, the master is responsible for the servant's acts, no matter how willful, malicious or unauthorized it may be."

And in Wood on Master and Servant, Sec. 321, the statement is found:

> "When by contract or by statute the master is bound to do certain things, if he intrusts the performance of that duty to another, he becomes absolutely responsible for the manner in which the duty is performed, precisely the same as though he himself had performed it, and that without any reference to the question whether the servant was authorized to do the particular act; while, when the action sounds entirely in tort, lack of authority on the part of the servant avoids liability."

In *Maynard* v. *James*, 109 Conn., 365, 65 A. L. R., 427, in which it appeared that an employee of a garage keeper, without authority, wrecked a patron's automobile while using it for his own pleasure, the opinion of that Court in part is:

> "The argument of the defendants is largely based upon the thesis that they are not liable for the negligence of the helper

because at the time of the accident he was not acting within the scope of his employment. However that may be, their contention overlooks a clear breach of duty which fastens an unquestionable liability upon them. One of the bases of recovery stated in the complaint is that the defendants did not regard their undertaking to store and safely keep the car for the plaintiff, and the Trial Court states as one of their conclusions that they did not perform this obligation. When the plaintiff left the car in the garage, the defendants, as bailees for hire, assumed the obligation not only to use due care in the performance of the services required, but to keep it in their garage or other appropriate place ready for redelivery to the plaintiff when he should come for it. . . . The driving of the car out of the driveway into the street, and its subsequent operation, was a wholly unauthorized use which, had the defendants done it themselves, certainly would have constituted a clear breach of duty. . . . This duty of the defendants was contractual in its nature; it required performance, and while no doubt they might delegate that performance to another, for breach of it, whether by themselves or by that other, they would be liable."

In *Evans* v. *Williams*, 232 Ill., App. 439, that Court observes:

"It is well established that the bailee is not an insurer and is liable only for the exercise of ordinary care in protecting the property intrusted to him, but it does not follow that the limitations on liability for a servant's negligence, in the usual action by a third party sounding in damages for tort alone, should be extended to an action for breach of a contract of bailment. In bailment, the contract is in its nature a direct and personal obligation by which the bailee undertakes personally to keep safely the property committed to his care. It is an obligation from which he can not relieve himself without the other's consent. . . . The actual work of guarding the property may be delegated to an employee, and in the customary way of conducting many businesses this must be done during

certain hours of the day, but the bailee is not thereby relieved from the personal obligation of his contract. An employee to whom such duty is delegated stands in the place of his employer and any negligence of this employee in protecting the property is the negligence of the employer, who can be made to respond in damages caused thereby."

In *Corbett* v. *Smeraldo*, 91 N. J. L., 29, on facts similar to those in the case at bar, it is said:

"We think this case does not involve the question of the master's responsibility for the tortious acts of his servants. It involves rather the question of the master's liability for breach of his own contract. . . . What were the terms of the contract? Those terms are rarely expressed at length. Much must be left to implication and be determined in accordance with the business usages and customs of the times. . . . Storage involved keeping the automobile there and not permitting it to go out without the plaintiff's authority. If the defendant chose to intrust that duty to his night man, he was liable, not because the night man was negligent, but because the defendant himself had been guilty of a breach of his contract of storage. . . . There was a breach of the contract to store as soon as the automobile was taken out of the garage."

In *Insurance Co.* v. *Sturtevant*, 116 Ohio State, 299, an extended discussion of the question here involved includes the following:

"The distinction between the doctrine by which the master is held liable for a breach of his contractual obligation to another, notwithstanding the fact that the breach was committed by his servant without his knowledge or authority, while the subject of contract was in the possession of the servant by the authority of the master, and the doctrine by which the master is held not liable for the tort of his servant committed while the servant authorizedly is in possession of the master's property, but is using it for his own purpose and not

for the purpose of the master, is that the doctrine first above relates to a contractual obligation to a stranger to the servant, which the master has himself assumed and entered into, and from which he can not absolve himself save by performance; and since he elects to perform through his servant, the servant acts in his place and stead and can no more extinguish the obligation of his master under the contract by any act of his than the master can by his own act; whereas, the latter doctrine relates to no contractual obligation entered into by the master, but to a duty imposed by law upon every member of society, and liability thereunder arises from a violation of duty. If, then, the servant violates a duty and incurs liability while he is acting for himself and not for his master, the liability is his. The master is not absolved from an existing liability by the act of a servant; he simply has not incurred liability."

In the recent case of *Marine Ins. Co.* v. *Grand Central Garage,* 9 Pac. Rep., 2d Series, 682 (Nev., 1932), where the night man in a garage, without authority, took out a patron's car for a pleasure ride and wrecked it, that Court held that the act of the night man, although outside the scope of his employment, was not a defense to an action for a breach of the contract of storage. This case follows text and decision already cited.

Other cases reaching the same result by a somewhat different line of reasoning are *Southern Garage Co.* v. *Brown,* 187 Ala., 484; *Mehesy* v. *Mission Garage,* 60 Cal. App., 275; *Millwork Co.* v. *Garage Co.,* 30 Del., 383; *Insurance Co.* v. *Sales Co.,* 85 Ind. App., 675; *Vannatta* v. *Tolliver,* 82 Pa. Sup., 546; *McLain* v. *Automobile Co.,* 72 W. Va., 738. The point is discussed in the text of 38 Corpus Juris 86. It is annotated in 15 A. L. R., 686, 42 A. L. R., 138, and 65 A. L. R., 427.

We have carefully examined the cases cited by the defendant which seem to take an opposite view of the question here raised. *Firemen's Fund Ins. Co.* v. *Schreiber,* 150 Wis., 42, denies recognition of the exception to the general law of bailment, which has already been noted in the text and judicial opinions which have

been cited. This case has been repeatedly considered by other courts but so far as we can discover has not yet been followed. The conclusions in its majority opinion are at variance with the general consensus of legal opinion on the question. We are not convinced that it should be followed in this jurisdiction.

No more do we find warrant for a rejection of the majority view by a reading of *Smith* v. *Bailey,* 195 Mich., 105; *Indemnity Co.* v. *Fawkes,* 120 Minn., 353; and *Handley* v. *O'Gorman,* 45 R. I., 242. These cases appear to lack the element of a delegation of contractual obligation by the master or are governed by the general rule without consideration of the exception here invoked.

Our conclusion is that the action being for a breach of the defendant's contract of bailment, upon the undisputed facts, the plaintiff was entitled to recover for the damage done to his automobile. The amount assessed by the jury was not excessive. The rulings of the trial Judge were without error.

*Exceptions overruled.*
*Motion overruled.*