JOSEPH

v.

MUTUAL GARAGE CO., Inc.

No. 21953.

Kansas City Court of Appeals.

Missouri.

June 14, 1954.

B. T. Hurwitz, Eugene Taxman, Kansas City, for appellant.

Harry A. Morris, Kansas City, Hugh B. Downey, Kansas City, of counsel, for respondent.

BOUR, Commissioner.

This is an action to recover damages for an alleged breach of a contract of bailment. A trial before the court without a jury resulted in a judgment for plaintiff in the sum of $1,865. On the hearing of defendant's motion for a new trial, plaintiff voluntarily entered a remittitur of $100. The court overruled the motion for a new trial, set aside the judgment for $1,865 and entered judgment for $1,765. Defendant has appealed.

The case was submitted upon a "Stipulation of Facts" and the testimony of several witnesses. The parties stipulated that at all times in question the defendant, Mutual Garage Company, Inc., a corporation, owned and operated a public garage at 1023–25 Wyandotte Street in Kansas City, Missouri, "for the storage, handling and care of motor cars, for which storage, handling and care it made a charge"; that "on November 6, 1947 and for a period of years prior thereto the plaintiff was and had been a regular monthly customer of the defendant and stored and left his motor car for care in the defendant's place of business and had at all times, including the time in question, fully paid the charges demanded of him by the defendant"; that "on November 6, 1947 the plaintiff was the owner of a 1947 Oldsmobile four-door sedan and that at approximately 10:00 in the evening of November 6, 1947 the plaintiff delivered the same into defendant's possession for storage at its place of business and the said car was thereupon taken for care and custody at defendant's place of business by an employee of the defendant named George L. Parker, who was then and for some time before the duly constituted and appointed night foreman for defendant"; and that "the aforesaid night foreman, namely: George L. Parker, at about 3:00 a. m. on November 7, 1947, while plaintiff's said automobile was still in the care and custody of the defendant, did remove plaintiff's automobile from defendant's garage on a personal mission of his own and while the said George L. Parker was operating the plaintiff's automobile it was damaged".

Plaintiff testified on direct and cross-examination as follows:

"I never gave Mr. Parker or anyone else authorization to use my car, and Mutual Garage for years always had a standing order and would absolutely refuse to deliver my car to anyone unless on written orders, and Mr. Chappell was manager there.

"Q. Directing your attention to this evening (November 6, 1947), did you give

permission to use it? A. No, sir, under no circumstance.

"Q. Did you at any time prior to that give him permission? A. No, sir.

"Q. Mr. Parker in his deposition * * has said on a prior occasion when his child was sick that he used your car. A. Never to my knowledge. * * * The standing order was that no one should ever be permitted to use my car or take it out of the garage. To their great credit they held to that and twice I sent my trusted lieutenant for the car and they said they couldn't let him take it out, and Mr. Chappell would call and say is it all right, Mr. Joseph, to let this gentleman have your car."

Harry A. Rubin, president of Mutual Garage Co., Inc., testified for the company as follows:

"Q. What was the rule of the Mutual Garage with respect to use by its employees of customers' cars? A. There is a very definite rule that every manager or assistant manager and employee were aware of when they were hired. No customer's car was allowed to go out of the garage by an employee driving it. * * * It has always been the rule. If they took a car out they knew they would be immediately discharged. * * *

"Q. And this rule was made known to George L. Parker? A. Yes, it was I am sure. * * *

"Q. Had you ever heard that George L. Parker had used any other customer's car for his own use? A. No, never. * * *. He was fired the minute I found he had taken the car from the garage, when I found out he was unauthorized."

Roland Chappell, a witness for defendant, had been employed as manager of the Mutual Garage since 1936. His testimony concerning the defendant's "rule" was substantially the same as that of Harry A. Rubin. He further testified:

"Q. That rule was made known to George L. Parker? A. Yes, sir. * * *

"Q. Prior to November 7, 1947, had you ever heard Mr. George L. Parker was using Mr. Joseph's car or the car of any other customer? A. No, sir. * * *

"Q. And he was night foreman? A. Yes. * * *

"Q. What were his working hours? A. From 7 in the evening until 7 in the morning. * * *

"Q. During that time he was in complete charge of the garage? A. Unless myself or Mr. Rubin happened in. * * *

"Q. The evening of November 6, 1947, did you or Mr. Rubin go into the garage? A. I don't believe so; I don't recall.

"Q. Mr. Parker was in complete charge of that garage between the hours of 7 in the evening until 7 in the morning of November 7, 1947? A. That is true."

The deposition of Parker was introduced in evidence by defendant. Parker testified in part that about three a.m., on November 7, 1947, and while he was on duty as defendant's night foreman, he removed plaintiff's car from the Mutual Garage for the purpose of taking some friends to their home in Kansas City, Missouri; that while driving south on Broadway he fell asleep and the car crashed into a building; that he took the car from the garage without the knowledge of his superiors and in violation of instructions which he had received from them; that on one occasion prior to November 7, 1947, when his small child was sick, he used plaintiff's car for his own purposes. When Parker was asked why he used plaintiff's car on the morning of November 7, 1947, he said: "He (plaintiff) mentioned if I wanted to run an errand in his car it would be all right," and continued:

"Q. Do I understand then that Mr. Joseph had said to you that if you wanted to use his car for running a short errand it was all right for you to do so? A. Yes, sir.

"Q. When had he said that to you? A. Once or twice before in the past he mentioned that to me. I don't know just what date or anything."

At the close of all the evidence the defendant requested the court to dictate to the court reporter or to prepare and file a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded, as provided by Section 510.310, subd. 2, RSMo 1949, V.A.M.S. Defendant also requested the court to make a certain finding of fact and to state and approve certain conclusions of law. Thereafter the court filed a memorandum opinion which approved the requested finding of fact and one conclusion of law, and rejected the other conclusions of law submitted by defendant. As stated in the court's opinion, "the only facts in controversy are the extent of plaintiff's damages and whether plaintiff authorized and consented that defendant's employee, George L. Parker, could remove and use plaintiff's automobile for his own personal use." The court found that plaintiff had never authorized Parker to use plaintiff's car for his own purposes. It also appears from the opinion that the court reached the conclusion that "this is an action to recover damages for breach of an oral contract of bailment"; and that in ruling that defendant was liable for a breach of its contractual obligation to plaintiff, notwithstanding the fact that Parker was acting beyond the scope of his employment and contrary to instructions when he took the car out of the garage, the court relied upon our opinion in the case of Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co., Mo.App., 252 S.W.2d 108, and authorities cited therein.

While we have the right to consider the opinion of the trial court in ruling the cause here, it is our duty to review the case upon the law, the evidence, and the agreed statement of certain facts. We are not bound by any conclusions reached by the trial court either as to the disputed facts or the law. However, the judgment will not be set aside unless clearly erroneous and due regard will be given to the opportunity of the trial court to judge of the credibility of the witnesses. Section 510.310, subd. 4, RSMo 1949, V.A.M.S.; Dye v. School Dist. No. 32 of Pulaski County, 355 Mo. 231, 239, 195 S.W.2d 874, 879. As stated, one fact question was whether plaintiff authorized Parker to use plaintiff's car for his own purposes. Since the trial judge saw the witnesses and heard them testify, we defer to his finding on that issue.

While defendant-appellant has listed three separate points in its brief, the first and second points are closely related and amount to the contention that the court erred in rendering judgment for plaintiff. Defendant argues that this case involves a bailment for mutual benefit or hire arising out of an oral contract; that "in this situation the Missouri courts have not implied an absolute duty on the bailee to return the automobile in an undamaged condition, as the trial court did in the case at bar"; that in the absence of a special agreement, an ordinary bailee is not an insurer of the personal property intrusted to him, no matter to what class he belongs; that where the bailment is for the benefit of both parties, the bailee, in the absence of a special agreement, is liable for the loss of, or damage to, the subject matter of the bailment only when the loss or damage was caused by his failure to exercise reasonable or ordinary care for the protection of the property; that in the instant case the plaintiff's action sounds in tort, and consequently "the gist of (his) cause of action is negligence"; that a bailee is not liable in an action of tort for the acts of his servant committed in violation of instructions and for the servant's own purposes, resulting in damage to the subject matter of the bailment; that the trial court erred in finding that plaintiff's action was for breach of contract and in relying upon our opinion in the case of Truck Leasing Corporation v. Esquire Laundry & Dry Cleaning Co., supra, hereinafter referred to as the Truck Leasing case.

In the Truck Leasing case, an action for damages for breach of a written contract by which the plaintiff rented its truck to the defendant for business purposes and the defendant agreed, in effect, that it would see that the truck was not driven beyond a certain area without the plaintiff's written consent, it appeared that the truck was

damaged while it was being operated outside the designated area by defendant's driver, who was using it for his own purposes without the knowledge or consent of the plaintiff or the defendant and in violation of instructions. The driver was on duty and in exclusive possession of the truck when he drove beyond the limits of the area. In holding that the plaintiff was entitled to recover from defendant the amount of damages sustained by it as a result of the driver's wrongful conduct, this court said:

"It is true that 'unless one has directed a specific tortious act or result or has been negligent, he is normally not responsible for the conduct of others, except that of his agents or servants acting within the scope of their employment. By contract, however, or by entering into certain relations with others, a person may become responsible for harm caused to them by conduct of his agents or servants not within the scope of employment.' Restatement, Agency, sec. 214, Comment a.

"It should be kept in mind that the instant suit is based on an alleged breach of a contract of bailment. In 6 Am.Jur., (Rev. Ed.), Bailments, sec. 266, p. 372, it is stated: '* * * the trend of the modern authorities is toward the rule that the doctrine of respondeat superior cannot be invoked to relieve any bailee of his liability, based on the contract of bailment, for breach of a duty to the bailor which he has undertaken to perform through the agent or servant; this is held to be true even though such employee was acting for his own purposes, without authority or contrary to instructions, and notwithstanding the bailee's own freedom from negligence in his selection and retention and in other respects.' See also 8 C.J.S., Bailments, § 27a(2), p. 274; 6 Am.Jur. (Rev. Ed.), Bailments, sec. 172, p. 290, and sec. 224, p. 329; 57 C.J.S., Master and Servant, § 570e(1), p. 314; 61 C.J.S., Motor Vehicles, § 726, p. 869. This rule is followed in a majority of jurisdictions, and in our opinion it is based on sound reasoning." 252 S.W.2d loc. cit. 113.

Defendant says that the Truck Leasing case involved a special written contract, and hence is not applicable to the facts developed in this case. We do not agree. Apart from statute, a contract of bailment may be written or oral. No particular form of words is prescribed. Suits v. Electric Park Amusement Co., 213 Mo. App. 275, 249 S.W. 656. And a contract of bailment may be express or implied. The rule applied in the Truck Leasing case is equally applicable here.

In 61 C.J.S., Motor Vehicles, § 726, p. 869, it is stated: "A garage keeper who is a bailee for hire of a stored motor vehicle is liable for damage to the vehicle resulting from the negligence of his agent, servant, or employee in the performance of any duty with respect to its care or custody within the general scope of the servant's employment; and, notwithstanding some decisions to the contrary, the weight of authority supports the rule imposing liability where the servant has come into the possession of the property while acting within the scope of his employment, although the injury occurs while he is exceeding the scope of his employment, as where he is using the vehicle for a purpose of his own." Among the cases in accord with the majority view are Pratt v. Martin, 183 Ark. 365, 35 S.W.2d 1004; Maynard v. James, 109 Conn. 365, 146 A. 614, 65 A.L.R. 427; Walters v. United States Garage, 131 Me. 222, 160 A. 758; Metzger v. Downtown Garage Corp., 169 Pa.Super. 384, 82 A.2d 507; Powell v. A. K. Brown Motor Co., 200 S.C. 75, 20 S.E.2d 636. Contra: Firemen's Fund Ins. Co. v. Schreiber, 150 Wis. 42, 135 N.W. 507, 45 L.R.A.,N.S., 314; Castorina v. Rosen, 290 N.Y. 445, 49 N.E.2d 521. See annotations in 15 A.L.R.2d 829, 65 A.L.R. 427, and 52 A.L.R. 711; Williston on Contracts, Vol. 4, sec. 1065A, p. 2960.

In Corbett v. Smeraldo, 91 N.J.L. 29, 102 A. 889, the court said: "We think this case does not involve the question of the master's responsibility for the tortious acts of his servants. It involves rather the question of the master's liability for breach of his own contract. * * * What were the

terms of the contract? Those terms are rarely expressed at length. Much must be left to implication and be determined in accordance with the business usages and the customs of the times. * * * Storage involved keeping the automobile there and not permitting it to go out without the plaintiff's authority. If the defendant chose to intrust that duty to his night man, he was liable, not because the night man was negligent, but because the defendant himself had been guilty of a breach of his contract of storage. * * * There was a breach of the contract to store as soon as the automobile was taken out of the garage."

Defendant insists that the case of Evans v. A. L. Dyke Automobile Supply Co., 121 Mo.App. 266, 101 S.W. 1132, decided by the St. Louis Court of Appeals in 1906, is directly in point and should be followed. In that case it was held that a company which had a garage and dealt in automobiles was not liable to the owner of an automobile received by one of its agents for sale on commission, when the automobile was struck by an electric car and destroyed while it was being driven by the agent for his own purposes, since he was not, at the time, acting within the scope of his employment. It appears, however, that the court considered the action to be one sounding in tort and that the case did not involve the terms of the contract, whereas the present action is one to recover damages for breach of the contract of bailment. As a general rule, when the action sounds entirely in tort, the lack of authority on the part of the bailee's servant avoids liability. See Evans v. Williams, 232 Ill.App. 439, 443; Manhattan Fire & Marine Ins. Co. v. Grand Central Garage, 54 Nev. 147, 9 P.2d 682, 683. Cf. Bowles v. Payne, Mo.App., 251 S.W. 101, decided by the St. Louis Court of Appeals in 1923.

Defendant has also cited Bommer v. Stedelin, Mo.App., 237 S.W.2d 225; Oliver Cadillac Co. v. Rosenberg, Mo.App., 179 S.W.2d 476; McKnight v. Batrick, Mo. App., 49 S.W.2d 277. These cases are not in point.

■ As indicated above, the present action is based upon an alleged breach of the contract of bailment. The petition does not charge negligence on the part of defendant. The record shows that for a period of years plaintiff stored his car in defendant's garage at an agreed price for care and live storage; that he instructed defendant's manager not to let anyone use the car without his consent; that the defendant accepted plaintiff's car for care and storage; and that defendant instructed all of its employees, including George L. Parker, its night foreman, not to use any customer's car for their own purposes. It is clear that the defendant corporation, as a bailee for hire, impliedly, if not expressly, agreed to keep the car safely and redeliver it to plaintiff on demand. When plaintiff left the car in the garage for care and storage, the defendant assumed the obligation not only to use due care in the performance of the services required, but to keep it in the garage and not let anyone use it without the consent of plaintiff. About 3:00 a. m., on November 7, 1947, the defendant's night foreman, then in sole charge of the garage, took plaintiff's car out of the garage, without authority, and while using the car for his own purposes wrecked it.

■ Since the car was taken out of the garage without plaintiff's consent, defendant is liable for breach of the contract of bailment, unless it be a defense that the night foreman, Parker, was acting beyond the scope of his employment. Parker had been instructed by defendant's president and manager not to use plaintiff's car for his own purposes, but that did not relieve defendant from the obligation of its contract. As stated in Corbett v. Smeraldo, supra, the question involved is the liability of a bailee for hire for breach of contract, not the liability of a master for the torts of a servant. Our conclusion is that the action being for a breach of the defendant's contract of bailment, upon the undisputed facts, the plaintiff was entitled to recover for the damages done to his automobile. As indicated above, the great weight of authority supports this conclusion.

Defendant's last point is that "the trial court erred in allowing plaintiff the sum of $1,550.00 for damages to his automobile." This general statement in defendant's brief, under points and authorities, does not comply with Supreme Court Rule 1.08(a) (3), 42 V.A.M.S., and consequently does not present anything for review. Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, Mo.Sup., en banc, 266 S.W. 2d 647, 649, 650; Daugherty v. Maddox, Mo.Sup., 260 S.W.2d 732, 734.

The judgment should be affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.