**JULIO ALVARADO GARCIA, Plaintiff**

v.

**FATIMA GALEA'I dba PARADISE TRAVEL INC.,
and KEN VILIAMU, Defendants**

High Court of American Samoa
Trial Division

CA No. 41-87

April 27, 1990

Before KRUSE, Chief Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendants, Gata E. Gurr

*Facts*

At all relevant times, defendant Fatima Galea'i owned and operated a travel agency doing business as Paradise Travel, hereafter referred to as "Paradise". Part of the service which Paradise offered to its clientele included the earlier transfer of a customer's luggage, and then his later transport as well, to the airport. Paradise had the defendant Ken Viliamu in its employ to provide this special pick up service. The parties' written stipulation of facts contained the following description of Viliamu's duties:

> [t]he instructions given by Paradise Travel to the employee [Ken Viliamu] was [sic] to pick up the bags from the purse seiner in a vehicle provided by the company, [and] lock them up inside the trunk of the car while the employee is at home awaiting the time to check them in. When it [was] time to check in, the employee was to take the luggage to the airport and check them in with the airline.

At all relevant times, plaintiff Garcia was a fisherman with a vessel affiliated with one of the canneries which numbered among Paradise's clients. He made plans to visit his family in Peru after his return from a certain fishing voyage and, as with his previous trips home, plaintiff's employer arranged his round trip airline tickets through Paradise. On the appointed day of travel, therefore, defendant Viliamu was sent to collect plaintiff's luggage. On this occasion Viliamu did not take the vehicle provided by his employer, but went in a pickup truck and was accompanied by four young men. He arrived at plaintiff's vessel around eight in the evening, whereupon the plaintiff hurriedly changed and packed away a pair of shorts he was earlier wearing and in which he was carrying certain funds to be taken on the trip. Plaintiff

15

testified that this consisted of cash in the amount of $3,300.00 and traveller's checks in the amount of $420.00. He realized only after Viliamu had left that he had packed away his money along with his shorts. He made a mental note to remove his money from his bag once he got to the airport.

The parties further stipulated that:

[f]rom the purse seiner, Ken Viliamu and the men went to the main dock to pick up a fish. After picking up the fish the men proceeded towards Nu'uuli. On their way they picked up one Kapeneta Leu at Utulei. From Utulei Ken and his men went to Nu'uuli to drop off the fish. From Nu'uuli the group went to Pava'ia'i to drop off Mr. Leu. Upon leaving Pava'ia'i they headed for Tafuna. At Tafuna the luggage was unloaded and taken into the house belonging to Ken's family. At about 10:45 p.m., Ken took the luggage to the airport to be checked in.

When plaintiff arrived at the airport, he located Viliamu together with his luggage. Upon opening his bags, plaintiff discovered that the contents of his luggage had been tampered with; some of his clothing had been removed and all of his money was missing. After some exchange with Viliamu about the missing money, and after plaintiff made known his refusal to travel without his funds, Viliamu left momentarily but then returned with plaintiff's traveller's checks. In the end, plaintiff did not get his cash nor did he travel that day; instead, he remained and filed a complaint with the Police Department. However, before the police had made any headway in their investigation of that complaint, Viliamu quietly managed to depart the territory and he is now thought to be living somewhere in New Zealand.

*Discussion*

Plaintiff sues Viliamu's employer for the recovery of his missing funds arguing a breach of bailment and/or vicarious liability on the grounds of *respondeat superior*. For reasons given, plaintiff must prevail.

Firstly, we reject the notion harbored by the defense that Paradise could not have been a bailee because its luggage pick up service was gratis and "not a bargained-for exchange." To the contrary,

16

> [a] bailment for mutual benefit arises whenever it
> appears that both of the parties receive a benefit from
> the transaction. It is not essential, to constitute a
> bailment for mutual benefit, that the bailee actually
> receive compensation in money or tangible property, so
> long as the bailment is an incident of the business in
> which the bailee makes a profit, or was accepted
> because of benefits expected to accrue.

*Global Tank Trailer Sales v. Texitilana-Nease, Inc.*, 496 P.2d 1292,
1294-95 (Kan. 1972). In the matter before us, Paradise can hardly claim
to be acting gratuitously with its pick up service. Its efforts in this
regard are business related and revenue motivated --- the attraction of
clientele and the sale of airline passage. As Ms. Galea'i candidly
explained, the pick up service was offered as an inducement for people
to travel with Paradise. In these circumstances Paradise became a
depositary of its customers' property as an incident to its business (the
bailment purpose being the attraction of patronage) and as such it is liable
for the loss of that property as a bailee for hire, the relationship between
the parties being one for mutual benefit. *See also Berlow v. Sheraton
Dallas Corporation*, 629 S.W.2d 818 (Tex. App. 1982); *Greer v. Los
Angeles Athletic Club*, 258 P. 155, (Cal. App. 1927), *Hotels Statler Co.
v. Safier*, 134 N.E. 460 (Ohio 1921); *See generally* generally 8 C.J.S.
*Bailments* § 8 (1962).

Since there was a bailment for mutual benefit, the next question
is whether Paradise exercised the required due diligence in the care of
plaintiff's luggage. *See, e.g., Fraam v. Grand Rapids & I. Ry. Co.*, 126
N.W. 851 (Mich. 1910). That due diligence has been spoken of in terms
of "ordinary care" which "ordinarily prudent men, as a class, would
exercise in caring for their own property under the like circumstances."
*Id.* at 853. *See also* 8 Am. Jur.2d *Bailments* § 222 (1980).

We are satisfied that there was a bailment, and that certain of
the bailed property was never returned by the bailee to the bailor upon
the latter's demand. By the same token, however, we were told nothing
about the funds except that they remained missing save for the returned
traveller's checks. There can hardly be any argument with the claim that
Ken Viliamu simply did not take care of plaintiff's luggage while he had
it in his possession. The evidence was very clear; Viliamu failed to take
any security precautions whatsoever with regard to plaintiff's property.
From the time he picked up the bags to the time of check in, Viliamu had
exposed the luggage to numerous opportunities for tampering, and,

17

indeed, it was tampered with. The bags were picked up in the hours of darkness; they were loaded into a pickup truck with a number of people and transported about for an extended period of time; during this time, third parties had access to the bags. Assuming that Viliamu himself was not responsible for the theft of plaintiff's funds, it logically follows, on the extent of the record before us, that plaintiff's loss arose through, or was proximately caused by, Viliamu's failure to properly look after the luggage.[1]

This is a loss for which Paradise is vicariously liable. As a master is vicariously liable for the actionable wrongs of his servants committed within the scope and course of employment,[2] so is the bailee employer answerable for loss or injury with respect to the thing bailed resulting from the negligence or wrongful acts or omissions of his employees in the execution of the bailment, within the course and scope of their employment. 8 Am. Jur.2d, *supra* at §§ 236-37. Certainly in the matter before us, the missing bailed property was stolen during the course of Viliamu's employment; his duties were to pick up plaintiff's bags and look after them, however, the bags were interfered with while Viliamu was supposed to be looking after them.

---

[1] The courts have in many instances held that a bailee's failure to return bailed property upon demand by the bailor establishes a presumption or prima facie case of negligence against him. Accordingly, it has been determined that such a bailee must rebut the presumption or demonstrate that he did indeed use due care to safeguard the bailed property. *See* Am. Jur.2d *Bailments* §§ 329 - 338 (1980).

[2] This principle of law, usually referred to by the label *respondeat superior*, and which in itself means nothing more than "look to the man higher up," is a rule of policy, a deliberate allocation of risk. Prosser and Keaton on Torts 500 (5th ed. 1984).

> The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed on the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance to the public, and so to shift them to society, to the community at large.

*Id.* at 500-501.

We also find Paradise to be directly liable to plaintiff. We are told nothing about storage measures taken in connection with allowing an employee to take home a passenger's luggage except that he is instructed to lock up the luggage in the trunk of a company provided vehicle. We agree with the doubts raised by plaintiff as to the security of this practice. Paradise as the bailee enterprise had the primary duty of care towards the security of plaintiff's property. It seems, however, that Paradise shifted that responsibility to Viliamu by being content to rely entirely on the employee to secure a reasonably safe storage when allowing him to take a customer's luggage home as opposed to a facility provided by Paradise specifically for this holding purpose. This entails reasonably foreseeable opportunities for tampering with a customer's luggage. Furthermore, a bailee should not be able to escape liability for his employee's failure merely because he had instructed the employee to exercise due care. In *Metzger v. Downtown Garage Corp.*, 82 A.2d 507 (Pa. Super. 1951), it was held that a parking lot owner (the bailee) could not escape his contractual obligation towards the car owner simply by saying that he is not liable because his servant had stolen the owner's vehicle. The court here reasoned that "[t]he bailee cannot receive money for the performance of a duty, and at the same time shift responsibility to a servant, and thus be relieved from liability for the violation of the very duties attending the bailment." *Id.* at 508. This "contractual" basis of liability is direct as opposed to liability imputed under the doctrine of *respondeat superior* for employee wrongs committed "during the course of employment." *See also Joseph v. Mutual Garage Co., Inc.*, 270 S.W.2d 137 (Kan. App. 1954); 8 Am. Jur.2d, *supra* at §§ 237-38.

For the foregoing reasons, plaintiff shall have judgment against defendant in the sum of $3,300.00.