Robinson, J.
 

 The sole question presented here is whether a bailee for hire may be made to respond in damages to his bailor for a breach of his contract of bailment to redeliver the subject of the' bailment to the bailor, where the subject of bailment has been destroyed and redelivery has been
 
 *302
 
 rendered impossible by an act of tbe bailee’s servant, done by such servant solely for his own purpose and pleasure, without the knowledge of the bailee, and in violation of his orders, but while the subject of bailment, by the express order of the bailee, was in the exclusive possession of such servant for the purpose of performance of the contract ,of bailment.
 

 The question arose in this case by the refusal of the court to give the following charge, requested by the plaintiff, in writing, before argument:
 

 “(1) If you find from a preponderance of the evidence that the defendant, pursuant to an agreement with Lou M. Burlingame so to do, sent its employe to Findlay, Ohio, to bring Burlingame’s said automobile from Findlay, Ohio, to defendant’s service station in Toledo, Ohio, and that defendant’s employe so sent took possession of said automobile at Findlay, Ohio, then I charge you that the possession of said automobile by said employe was the possession of the defendant, and that said employe was required to exercise ordinary care in the safe-keeping of said automobile until he had delivered same to defendant’s service station in Toledo, Ohio, and if you find from a preponderance of the evidence that said employe of said defendant did not exercise ordinary care in the safekeeping of said automobile, and by reason of said failure to exercise ordinary care in the safe-keeping of said automobile said automobile was damaged and not delivered to said Burlingame at defendant’s service station, then the plaintiff is entitled to recover from the defendant the amount of damages sustained by said Burlingame.
 

 
 *303
 
 “(2) If von find from a preponderance of the evidence that the defendant, pursuant to an agreement with Lou M. Burlingame so to do, sent its servant to Findlay, Ohio, to bring Burlingame’s said automobile from Findlay, Ohio, to defendant’s garage in Toledo, Ohio, and that defendant’s servant so sent took possession of said automobile at Findlay, Ohio, then I charge you that the possession of said automobile by said servant was the possession of the defendant, and the defendant would be liable for its servant’s acts and conduct in the matter of the safe-keeping of the automobile until it was delivered by him to defendant’s garage in Toledo, Ohio, notwithstanding said servant for some purpose of his own may have diverted or turned aside from the direct course or route from Findlay, Ohio, to defendant’s garage in Toledo, Ohio.”
 

 Also by exceptions to the following charge, given by the court as a part of his general charge:
 

 “The defendant, as I have read to you, admits in its answer that at the request of Burlingame, the defendant sent to Findlay, Ohio, one of its employes, whom the evidence shows to have been a man named Grossman, to drive the Marmon automobile of Burlingame from Findlay to its garage in Toledo, and that Crossman took possession of the automobile for this purpose. The possession of the automobile by Crossman thereby became and was the possession of the defendant.
 

 “The automobile having been thus delivered to the defendant, the defendant, as I have said, in the absence of some lawful excuse for not so doing, was bound to deliver it to the owner upon demand
 
 *304
 
 therefor at the time and place agreed upon as shown by the evidence. And if without such excuse the defendant failed or refused to deliver the automobile to the owner upon such demand therefor, defendant by such failure or refusal would become liable to plaintiff for the reasonable market value ■of the automobile at the time of the loss thereof to the owner, Burlingame.
 

 “The defendant, as I have read to you, from its answer, claims it was excused from delivering the automobile in question to Burlingame when demanded because its employe, Crossman, converted the automobile to uses and purposes of his own. In other words, that he did not drive the automobile to the garage of defendant, but drove and used it on his own business and pleasure and without the scope of his employment, and thus made it impossible for the defendant to deliver it to Burlingame.
 

 “And this is a lawful excuse, if under the law and the evidence you find the facts to be in this regard as claimed by the defendant.”
 

 The question presented here is not new. On the contrary, it has been under consideration by courts in various jurisdictions in this country and in England since an ancient date; but the difficulty arises out of the fact that the courts of the various jurisdictions, in solving the question, have arrived at widely divergent conclusions, and it is doubtful whether any useful purpose can be served by collating the authorities pro and con in other jurisdictions' and gratuitously commending the logic of the one line of decision and condemning the logic of the other line.
 

 
 *305
 
 It must be conceded that bad the bailee, in person, if a corporation can be conceived of doing anything in person, done all the things the pleadings and evidence show its servant did, and the loss had occurred in the manner it did occur, the bailee would be required to respond to the bailor in damages for the breach of his contract of bailment.
 

 This court, in the case of
 
 Stranahan Brothers Catering Co.
 
 v.
 
 Coit,
 
 55 Ohio St., 398, 45 N. E., 634, 4 L. R. A. (N. S.), 506, had under consideration the subject of the liability of the master for the unfaithful performance by the servant of the master’s contract, and there held:
 

 “Where a master owes to a third person the performance of some duty, as to do or not to do a particular act, and commits the performance of the duty to a servant, the master cannot escape responsibility if the servant fails to perform it, whether such failure be accidental or willful, or whether it be the result of negligence or malice. Nor is the case altered if it appear that the malice was directed to the master.
 

 “Where a master is under contract to deliver to the proprietor of a cheese and butter factory, pure milk, and has knowledge that the milk so delivered is to be mixed with the milk of other patrons, and intrusts the delivery to a servant who, in the course of such employment, delivers adulterated milk, the master is liable for damages necessarily and directly resulting by reason of such, delivery, and it is not a defense to show that the servant without authority and purposely, and to gratify his malice towards his employer, and with intent to injure him, adulterated the milk so delivered by
 
 *306
 
 mixing with it water, and that the master had no knowledge of snch adulteration. In such case the rule of damages is compensation for the injury.”
 

 While the element of bailment did not enter into that case, the liability grew out of a contract; and no different principle applies to liability under a bailment contract when once the terms and conditions of such contract are determined than under other contracts, the difference, if any, between contracts of bailment and other contracts being as to the terms and conditions that are implied in bailment contracts, or engrafted thereon by statutory law, that are not always implied in other contracts.
 

 Among the things implied, if not expressed, in the contract of the defendant with Burlingame, were that it would exercise ordinary care in the preservation of the automobile, the subject of the bailment, and that when it had performed its obligation in reference to repair and transportation it would redeliver to Burlingame. Whether or not the defendant exercised ordinary care in the preservation of the subject of bailment and in the performance of its contract with Burlingame, in so far as it affects the question here under consideration, depends upon whether it is chargeable with a breach of its contract, committed by its servant, without its authority, but while the servant had possession of the automobile by its authority and for the purpose of performance of its contract of bailment; in other words, whether it may be absolved from performance of its contractual obligation by reason of the unfaithfulness of one of its own servants.
 

 If it be the law with reference to bailment con
 
 *307
 
 tracts that the bailee master is only liable for the things he in person does or omits to do, in breach of his bailment contract, or the things he authorizes his servant to do or to omit to do, in breach of his contract, what reason exists for denying the same degree of exemption to the master from liability for the acts of his servant in all other contractual obligations? Possession of the automobile concededly came into the defendant when its servant took possession of it at Findlay. Possession by the servant became
 
 ipso facto
 
 the possession of the master. When did the possession pass from the master? Can it be said that it rests in the breast of the servant to release his master from contractual liability to a stranger to the servant by himself becoming unfaithful to his master? If so, the contract of bailment affords the bailor scant protection. If the master be not responsible for the act of his servant, the bailor, for his own security, before entering into such contract, must not only investigate and determine the trustworthiness and the financial responsibility of the bailee, but must do the same with reference to each of his servants. The doctrine of
 
 respondeat superior
 
 makes the master responsible for the tort of his servant, done in the performance of the master’s business; and an agent may bind his principal to a third person, within the scope of his authority. But neither a servant nor an agent is imbued with power to absolve his master or principal from his contractual obligation to a third person by an act which, if done by the master or principal, would not have absolved him.
 

 The theory upon which a master is held liable
 
 *308
 
 for the tort of his servant while engaged in the performance of the master’s business is that the thing he is doing is done in obedience to the master’s will. He is acting as an arm of the master, responding to the master’s volition, and his tort is therefore the master’s tort. The liability of the master grows out of the act of the servant, and is the master’s liability because of the relationship of master and servant, and the servant, because he is acting as the arm of the master, by his tort may create a liability of the master to which the master may be compelled to respond.
 

 The theory upon which a master is not held liable for the tort of his servant, when the servant has departed from the performance of his master’s business and gone upon his own business, is that he is no longer obeying the master’s will, he is no longer an arm of the master, responding to the master’s volition, but is acting upon his own volition, obeying his own will, acting for himself, not as a servant, but as an independent person, master of his own movements. -
 

 The reason that the same theories do not apply to the liability of the master for a breach by his servant of a contractual obligation of the master to a third person is that the obligation of the master to such third person does not arise out of the relationship of master and servant, but arises out of the master’s contract, from which he cannot by any conduct of his own alone release himself. He cannot accomplish by his servant that which he cannot accomplish in his own proper person. Release therefrom, to be effective, must be for some act or
 
 *309
 
 omission of the offended party, and not for the act or omission of the party, his servant or agent, seeking the release.
 

 The liability of the master for the tort of the servant grows ont of the theory that the servant is acting for the master. The liability in this case grows ont of the fact that the master has failed to do the thing he agreed to do. The fact that he selected an unskillful or untrustworthy servant to carry out for him his part of a contract with a third person is no more an excuse against such third person than would be his own excuse that he employed his own unskillful left hand instead of his skillful right hand in the performance of the work.
 

 The distinction between the doctrine by which the master is held liable for a breach of his contractual obligation to another, notwithstanding the fact that the breach was committed by his servant without his knowledge or authority, while the subject of contract was in the possession of the servant by the authority of the master, and the doctrine by which the master is held not liable for the tort of his servant committed while the servant authorizedly is in possession of the master’s property, but is using it for his own purpose and not for the purpose of the master, is that the doctrine first above relates to a contractual obligation to a stranger to the servant, which the master has himself assumed and entered into, and from which he cannot absolve himself save by performance; and since he elects to perform through his servant, the servant acts in his place and stead and can no more extinguish the obligation of his master under the
 
 *310
 
 contract by any act of bis than tbe master can by bis own act; whereas, the latter doctrine relates to no contractual obligation entered into by the master, but to a duty imposed by law upon every member of society, and liability thereunder arises from a violation of duty. If, then, the servant violates a duty and incurs liability while he is acting for himself and not for his master, the liability is his. The master is not absolved from an existing liability by the act of the servant; he simply has not incurred liability.
 

 The degree of responsibility which the master in the instant case placed upon his servant, the extent to which he intrusted him to act in his place and stead, were of his own measuring and determination. We are not in accord with any principle which would permit him to relieve himself of the responsibility thus contractually assumed for the reason that he made an unwise selection of the servant, or was the victim of his own misplaced confidence.
 

 Without any attempt to reconcile, distinguish, or follow the cases decided in the various jurisdictions outside of Ohio, we are of opinion that Ohio is wisely committed to the doctrine that, as applied to contractual obligations to third persons, the possession confided to the servant by the master is still the possession of the master, and so continues, for the purposes of the master’s contractual obligation to a third person, until the master has performed his contractual obligation, or, as against the servant, has repossessed himself; that an act done by the servant which results in injury to the property
 
 *311
 
 of a third person, in the possession of the servant by the authority of the master, is the act of the master, for which the master is responsible upon his contractual obligation to such third person, notwithstanding the fact that the particular act which causes the injury and creates the damage is done in violation of the master’s instructions.
 

 The trial court committed reversible error in refusing to give the jury, as a charge before argument, plaintiff’s requests 1 and 2, and in giving the jury, in his general charge, the last two paragraphs as hereinbefore quoted from such charge.
 

 The judgment of the Court of Appeals and that of the common pleas are reversed.
 

 Judgments reversed.
 

 Marshall, C. J., Day, Allen, Kinkade, Jones and Matthias, JJ., concur.