THE J. G. McCRORY CO. *v.* HANLEY.

(Decided April 10, 1930.)

*Mr. Ben L. Bennett,* for plaintiff in error.
*Mr. S. W. Crawford* and *Mr. Charles Boyd,* for defendant in error.

FARR, J.   This case is here on error.   The action below was to recover the value of certain jewels, claimed to have been mislaid by Mrs. Mary Hanley, and thereafter not returned to her while in the store of the J. G. McCrory Company in the city of East Liverpool, on the 10th day of March, 1928.   The cause came on to be heard in the court below and resulted in a verdict and judgment for the amount claimed as the value of the jewels, and from that judgment error is prosecuted in this court upon two principal grounds:

First. That the judgment is against the weight of the evidence.

Second. That it is contrary to law.

The facts are as follows: On the 10th day of March, 1928, as above stated, between the hours of 11 and 12 o'clock a. m., Mrs. Mary Hanley, the defendant in error, went into the store of the J. G. McCrory Company in the city of East Liverpool to make the purchase of some finger stalls. To do this she went to the drug department near the toy counter, and, after having made her purchase, she says that she proceeded to pay for the same, and that at the time she was carrying over her arm a leather pocketbook or hand bag, inside of which was a smaller pocketbook, in which she carried her money. When she paid for her purchase, she says that she laid the pocketbook or hand bag on the counter at the drug department, left the store, and went directly across the street to the Newell System Bakery Shop. While at the bakery she discovered that she did not have her hand bag or pocketbook in which she carried her money. She says that she returned to the McCrory store in five or ten minutes, and upon entering made inquiry of some of the clerks as to whether or not they had seen or found a pocketbook, and was answered in the negative. She says that she attempted to discuss the matter with some man in the store, but that he did not pay any particular attention. She says later, that she thought she had been talking to the manager of the store. She also talked to the girl in the office of the store. The pocketbook was never returned to her, and, upon a hearing in the municipal court of the city of East Liverpool, where this cause was initiated, there was

a finding in her behalf; and, upon appeal to the court of common pleas, the same result was had.

It is insisted that the judgment is against the weight of the evidence. The record discloses that Mrs. Hanley, between the hours of 11 and 12 o'clock, went into the store to make the purchase of the finger stalls in question; that at that time she had with her a leather pocketbook, or hand bag of brown leather, some eight inches wide; that it was carried over her arm by a strap; that inside of this pocketbook was a receptacle in which she carried her money, and that within the pocketbook there were three rings, a set of earrings, and a brooch, one diamond ring being about one carat in size, a cluster diamond ring consisting of several diamonds set in a crown, and a ring with a ruby in it, also a pair of diamond earrings, set in white gold, and a brooch, which she says was an heirloom of the family; that after she made the purchase she went across to the bakery and there discovered her loss; that she promptly returned to the McCrory store, went in, discussed the matter with the clerk at the drug counter, and also obtained the services of a policeman, who probably went into the store with her; and that she thought she had talked with the manager, but that it was the assistant manager. The record further discloses that Rebecca Manlovitz, a young lady of about eighteen years of age, testifies that she entered the store at about 11:30 o'clock; that when she went in she saw a pocketbook lying close to the nearby counter of the toy department; that she gave the pocketbook to the young lady who was behind the counter, and that she slammed it under the counter—that is, the young lady clerk at the toy

department counter. So far as the gathering up of the pocketbook is concerned Rebecca Manlovitz is corroborated by Margaret Kephart, an aged lady, who entered the store about the same time, and was following just in the rear of Rebecca Manlovitz. She says that she saw Miss Manlovitz pick up the pocketbook, hand it to the young lady clerk behind the toy counter, who threw the pocketbook under the counter. Margaret Kephart recognized this young lady as a Miss Murray, who was employed in the store of the McCrory Company at that time.

There is some further corroborative testimony as to Mary Hanley having the pocketbook, by Lilly Casselman, who says that she saw Mrs. Hanley between 11 and 12 o'clock, and that she heard her ask several of the clerks about the loss of her pocketbook. She is corroborated in this by George Elleman Casselman, who says that he saw Mrs. Hanley with a pocketbook, carried by a strap, over her left arm, and that later she returned to the store and talked with some of the clerks concerning her loss.

It seems fairly conclusive that Mary Hanley, between the hours of 11 and 12 o'clock on the 10th day of March, 1928, went into the McCrory store in East Liverpool carrying over her arm the hand bag in question.

Mrs. Hanley describes the pocketbook as being something like eight inches in width, and it may have been of a fairly good size. Rebecca Manlovitz described the pocketbook which she picked up from the floor as a brown leather pocketbook, and in this perhaps she is corroborated by Margaret Kephart. Lilly Casselman and George Casselman practically

corroborate this statement. So there can be but little question that a dark brown leather pocketbook or hand bag was picked up near the toy counter by Rebecca Manlovitz, and that it was handed to Miss Murray behind the toy counter. Miss Murray says that it was not, but Miss Manlovitz and Margaret Kephart both state positively that a brown leather pocketbook was handed to Miss Murray behind the toy counter and by her thrown under the counter after she received it.

Upon the part of the defendant, Miss Murray testified that she did not receive the pocketbook, directly contradicting Miss Manlovitz and Margaret Kephart. The manager of the store says that he did not learn of the loss until ten days or two weeks later, and there is little other testimony for the defendant that reflects upon the question of the loss or the misplacing of this pocketbook.

It is insisted here that under the circumstances the J. G. McCrory Company would not be liable for this loss, and attention is called to some cases which are more or less persuasive in that behalf.

The first is the case of *Feder* v. *Franklin Simon & Co.*, (Sup.), 157 N. Y. S., 895, where the syllabus holds:

"Plaintiff, going into defendant's store and shown a place to put her things while she was trying on the dress, and assured by the saleswoman that her things were positively safe, and who thereupon put her purse and coat on the chair indicated by the saleswoman, and who on going back for them found that her purse was gone, could not recover the value of the purse and its contents, as defendant was liable for its loss only if it assumed its custody, and as it

assumed its custody only if it invited plaintiff to place it on the chair indicated, and as the invitation to try on the dress did not impliedly invite plaintiff to lay aside her purse the custody of which she might have retained, and as the express invitation to place her 'things' on the chair did not include her purse.''

It is readily apparent from reading the above syllabus and the discussion of the principles involved, by Lehman, J., at pages 896 and 897 of 157 N. Y. S., that the facts of the case are somewhat different from those of the case at bar. If Mrs. Hanley mislaid her purse, or left her purse upon the counter of the store in East Liverpool, and later it was traced to the custody of a duly authorized or recognized employee of the store, such facts would give rise to a different situation from that arising from the facts in the New York case, for the reason that the customer was, in that instance, invited to place her clothing upon a chair. She was not invited to leave her purse there. Therefore neither the store authorities nor an employee assumed control of the purse or the clothing, but it was at the election of the customer that the purse was left in the pocket of the clothing—a different situation obtaining from that in the instant case, provided it be shown that the purse of Mrs. Hanley found its way into the custody of an employee of the store.

Another case to which attention is called is *Waters* v. *Beau Site Co.*, 114 Misc. Rep., 65, 186 N. Y. S., 731, and time will not be taken to refer to the facts in that case. Sufficient is it to say, however, that a similar situation obtained as to facts.

In the case of *Robin* v. *Colaizzi*, 101 Misc. Rep., 298, 166 N. Y. S., 978, the syllabus holds:

"Where an overcoat is checked at a restaurant, the restaurant is not liable as bailee for the loss of a purse and contents in the pockets thereof, unless it has actual notice of their presence there, or the presence of articles of a similar nature might be presumed."

In above case the coat was checked. In the pocket of the coat was left some valuable property. It was extracted while the coat was checked. And yet the principle applied in that case is different from that involved in the instant case, for the reason that the last positive statement made concerning the contents of the purse was made by Mary Hanley. She testified that she left her hand bag or purse upon the counter of the drug department; that in it were these jewels. If Mary Hanley had simply left her purse upon that counter and gone out, and there was no testimony in this case except the fact that she left her purse there and it was not again returned to her, there could not be a recovery. But that is not the situation. By the testimony of two witnesses a purse answering to the description of Mrs. Hanley's was found on the floor at the toy counter near the drug counter where the hand bag was left. There cannot be much question about that, or about the fact that it was handed to a regular employee of the McCrory Company. She assumed charge of it and placed it under the counter at which she worked. There was, therefore, testimony such that the jury had a right to believe that this was the purse that Mrs. Hanley had unfortunately left lying on the counter of the drug department near by. The testimony is not strong, and yet it was testimony that the jury believed in the light of the fact that there

was no explanation in any way; it was not shown that any other purse had been lost that day or that there might have been a confusion of purses: it is confined to the single circumstance of Mrs. Hanley leaving her purse upon the counter in the drug department. Later a purse answering to that description was found and turned over to an employee of the company. This was some testimony from which the jury would have a right to believe that it was Mrs. Hanley's purse. And if the testimony is sufficient to authorize the jury to find that Mrs. Hanley's purse was turned over to an employee of the McCrory Company store, and that the jewels of Mrs. Hanley were in the purse at the time, then the conclusion is that this judgment cannot be reversed as against the weight of the evidence, and is not contrary to law, for the reason that there can be little question in the light of the authorities cited that, where a customer is invited into a store to make purchases, and leaves or loses property that is finally turned over to an employee of the store, and not returned to its owner, the employer will under such circumstances be liable for the loss of the property.

It was the duty of this clerk to turn the hand bag over to the "Lost and Found" department, or into the office, whichever the rules required, and it was the violation of this rule that lost Mrs. Hanley's purse, which was never returned. Mrs. Hanley lost control of her hand bag. An employee of the store company got it, so the jury found; the company's employee disobeyed the rules by failing to turn it in. In all fairness, the company should, under such circumstances, be liable for such violation. It was not, in the final analysis, the fault of Mrs. Hanley that

deprived her of her purse, but the misconduct of the employee. Of interest is 17 Ruling Case Law, page 1204, Section 6; page 1205, Section 7; page 1199, Section 2; 2 Corpus Juris, page 848, Section 533; *National Liability Ins. Co.* v. *Sturtevant-Jones Co.*, 116 Ohio St., 299, 305, 156 N. E., 446, 52 A. L. R., 705; *Stranahan Brothers Catering Co.* v. *Coit*, 55 Ohio St., 398, 45 N. E., 634, 4 L. R. A. (N. S.), 506, second syllabus, which reads as follows:

"Where a master owes to a third person the performance of some duty, as to do or not to do a particular act, and commits the performance of the duty to a servant, the master cannot escape responsibility if the servant fails to perform it, whether such failure be accidental or wilful, or whether it be the result of negligence or malice. Nor is the case altered if it appear that the malice was directed to the master."

The McCrory Company owed Mrs. Hanley the duty of returning her pocketbook; the employee did not do so; the hand bag was under the counter when Mrs. Hanley returned and talked to the clerk; why did she not give it to her?

In order to reverse this judgment on the weight of the testimony, it must be found that it is clearly and manifestly against the weight of the evidence, and, having in mind that which has been said, the leaving of the purse on the drug counter, the finding near by of a purse answering to that description, its being turned over to a clerk of the McCrory Company and not returned to the owner, Mrs. Hanley, it cannot well be said, under these circumstances, that the conclusion of the jury is so clearly against the weight of the evidence as to warrant a reversal.

Nor is the judgment contrary to law. The cause presents an interesting question. However, for the reasons given, the judgment is affirmed.

*Judgment affirmed.*

POLLOCK and ROBERTS, JJ., concur.