**Emil Till, Appellant, v. Material Service Corporation, Appellee.**

**Gen. No. 38,974.**

104

MATCHETT, P. J., dissenting.

Opinion filed January 4, 1937. Rehearing denied January 18, 1937.

MICHAEL J. SULLIVAN, of Chicago, for appellant; SHEPARD ANDALMAN, of counsel.

D'ANCONA, PFLAUM & KOHLSAAT, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendant to recover $1,452 claimed to be due because of defendant's failure to return a special assessment bond of the face value of $1,000, with interest at six per cent per annum, which had been deposited with defendant as collateral security for a loan, and for defendant's failure to carry out its written agreement to replace the bond or pay the face value thereof. There was a trial before the court without a jury, a finding and judgment in defendant's favor, and plaintiff appeals.

The record discloses that plaintiff was a contractor engaged in the business of constructing sewers, and bought from defendant material required by him in his work; that about June, 1928, plaintiff borrowed $25,000 from defendant and to secure his note for this amount deposited as collateral special assessment bonds of the Village of Specialville of the face value of $50,000—50 bonds of $1,000 each. Thereafter plaintiff, from time to time, made payments to defendant on account of this indebtedness and about October 1, 1931, went to defendant's office to pay the balance and receive back his 50 bonds. Defendant was unable to tender all the bonds because, it said, one of them had been lost or misplaced. Thereupon defendant's representative stated that if plaintiff would pay the balance due in full, it would obtain a duplicate of the bond and return it to plaintiff, or it would pay the amount of the bond. Plaintiff agreed to this, and thereupon defendant pre-

pared, signed and delivered to plaintiff a letter as follows:

"Material Service Corporation
Building and Paving Materials
Foundry Sands—Fire Brick—Coal
33 North LaSalle St.
CHICAGO

October 1, 1931.

"Mr. Emil Till,
Chicago, Illinois.

"Dear Sir:

"This is to acknowledge that we have received from you one bond in the amount of One Thousand Dollars ($1,000.00) on the Village of Specialville which was deposited with us as collateral security on your account, which account you are now paying in full.

"We hereby guarantee to either secure a duplicate of said bond which has been lost, or to secure the payment to you of the amount of said bond upon its maturity. This bond, we have been advised, matures on 12/31/32.

"Yours truly,

MATERIAL SERVICE CORPORATION

JG:LM                    By: Irving Crown"

Plaintiff then paid the balance he owed defendant and received his collateral except the $1,000 bond. Afterward, defendant having failed either to give plaintiff the duplicate bond or to pay the amount of it, plaintiff brought the instant suit.

The bond was dated December 1, 1927, and bore interest at the rate of six per cent per annum, and plaintiff's claim was for the face of the bond with interest thereon.

Defendant filed an affidavit of merits in which it set up that the bond mentioned in plaintiff's statement of claim "was stolen on or about May 31, 1929, from the defendant without fault or negligence on its part"; and that because of the theft defendant "at no time

became liable to return said bond or to account for the value thereof to the plaintiff''; that the making and delivery of the letter or agreement dated October 1, 1931, set forth in plaintiff's statement of claim ''was without any good or valuable consideration.''

Plaintiff testified that on October 1, 1931, he called at defendant's place of business in the Foreman Bank building and advised Mr. Madden, credit manager of defendant, that he wanted to pay the balance of his indebtedness and to obtain the return of his bonds; that Mr. Madden produced all the bonds but one; that he said, ''It must have been lost while we were moving from the Conway building to the Foreman Bank building; probably mislaid somewhere, but if you make the payment in full we will get a duplicate of that bond or we will pay you the amount of the bond''; that this was agreed to. The evidence further shows that at that time Mr. Madden caused the letter or agreement above quoted to be prepared by defendant's legal department and it was then presented to Mr. Irving Crown, vice president of defendant, who signed it and it was delivered to plaintiff, who paid the balance due and received 49 of his bonds.

Mr. Madden testified that at the time plaintiff called to pay the balance of his indebtedness he told plaintiff the bond had been stolen; that their offices had been burglarized and one of the bonds was missing; that the substance of what plaintiff then said was, ''he would expect us to make good on the bond or give him another duplicate bond; I said we would no doubt take care of it''; that he then had the legal department prepare the letter or agreement and had it executed by the vice president and then delivered to plaintiff, who paid the balance of his indebtedness; ''I had this letter drafted by the law department which he [Mr. Crown] was to sign as an officer of the company; he said all right; Till owed the corporation at the time we made a final settle-

ment about $25,000, and at this time he paid up in full.'' This witness gave further testimony to the effect that defendant's offices in the Foreman Bank building had been burglarized about June, 1929, and that shortly thereafter he advised plaintiff of this fact; that all the bonds had been kept by defendant in a vault in the basement of the building, except one which was kept in a vault in defendant's offices, and that the person who knew about the keeping of the bonds in the vault was John Svoboda, who at the time of the burglary and prior thereto was the auditor of defendant, but at the time of the trial was in California.

Irving Crown, vice president of the defendant company, testified concerning the keeping of the bonds and the fact that their offices had been burglarized.

The trial began on October 26, 1935, which was about six years after the burglary. A careful consideration of the testimony of Madden and of Crown discloses the fact that they had very little information about the safe-keeping of the bonds. The testimony of these two witnesses as to what they said concerning the burglarizing of their offices and the loss of the $1,000 bond is most unsatisfactory. When Madden was testifying his evidence was so unsatisfactory that the trial judge said, ''I am disgusted with this witness,'' and when Crown testified his evidence was likewise so unsatisfactory that the trial judge said, ''Maybe you can straighten him out, I can't.''

It is not at all clear that the bond was stolen; there is some evidence tending to show it might have been lost or misplaced in moving defendant's offices from the Conway building to the Foreman Bank building. The letter or agreement given plaintiff at the time he paid the balance of his indebtedness specifically states the bond was *lost*. Nor is the evidence at all satisfactory that defendant kept the one bond in its offices and the other 49 down in the vault. Crown testified,

"There were 50 bonds, 49 being kept in the vault in the safety deposit vault of the American National Bank building, and the other one was kept in the safe in the office because we generally kept a sample of the bond in the safe so that it would be easily accessible in case of an examination." Just why it was necessary to have a bond in the vault for examination does not appear.

Under the law, as the bonds were pledged to defendant and one not returned, plaintiff made a *prima facie* case, and it therefore devolved upon defendant to go forward with evidence that would tend to show that the loss of the bond did not result "from any fault or neglect on the part of the defendant." This proposition is stated by counsel for defendant and is a correct statement of the law. *Clemenson v. Whitney,* 238 Ill. App. 308; *Miles v. International Hotel Co.,* 289 Ill. 320.

In the *Clemenson* case we reviewed the authorities and refused to follow the rule stated in *Nichols v. Union Stock Yards & Transit Co.,* 193 Ill. App. 14, and other authorities there cited. We there said (p. 313): "It is the contention of the bailee defendant in the case at bar, that, although the plaintiff made out a *prima facie* case of negligence, by her showing that her car was delivered to the defendant, but that he failed to deliver the car back to her upon demand, he fully and successfully rebutted that presumption merely by showing that the car had been stolen, and that thereupon it devolved upon plaintiff, as a part of the burden resting upon her, to establish negligence on his part, and to show that the theft was caused by such negligence." The court then refers to the *Nichols* and other cases, and continuing said, "We have gone into this question again, in connection with the case at bar, and have come to the conclusion that the better reasoning and the weight of authority is that where the bailor makes out a *prima facie* case of negligence against the bailee, by showing that the goods bailed have not been

returned on demand, such *prima facie* case is not overcome by a showing, on the part of the bailee, to the effect that the goods have been burned or otherwise destroyed or have been stolen, but before the bailor's *prima facie* case can be said to be overcome, the bailee must further produce evidence tending to prove that such burning or loss or theft was occasioned without his fault." The court there also quoted from *Miles v. International Hotel Co.*, 289 Ill. 320, the following: "The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand, the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault." We think the evidence was insufficient to overcome plaintiff's *prima facie* case.

We are also of opinion that plaintiff is entitled to recover on the letter or written agreement delivered to him by defendant under the circumstances above stated. There was sufficient consideration for the execution of the agreement by defendant. It wanted to receive its money but could not return the bond, and in consideration of plaintiff paying the balance he then owed without receiving his bond, defendant executed the agreement whereby it agreed to obtain a duplicate bond for plaintiff or to pay him the face of the bond. Plaintiff thereupon received the agreement and paid the balance. This is sufficient consideration in any view of the law. *Hulse v. Hulse,* 155 Ill. App. 343, where the court, speaking by Mr. Justice Duncan, held that a debt barred by the statute of limitations or any moral obligation which was once a legal one, is sufficient consideration to support a contract. The court there said (p. 348): "The consideration was ample to support the contract. The compromise of a doubtful claim, fairly obtained, is a sufficient consideration on

which to found a contract, no matter what the ultimate result of a contest might have been. So is a debt barred by the Statute of Limitations, or any moral obligation which was once a legal one. *Lawrence v. Coddington,* 52 Ill. App. 133; *Honeyman v. Jarvis,* 79 Ill. 322; *Keener v. Crull,* 19 Ill. 189; *Morse v. Crate,* 43 Ill. App. 513; *Hobbs v. Greifenhagen,* 91 Ill. App. 400. These authorities proceed upon the principle that the law permits a man to pay an honest debt no matter how barred, or to right any wrong or grievance that another may have suffered by his conduct, without litigation; and that 'when he constitutes himself a judge in his own cause and decides against himself,' by making a new contract, 'he cannot be heard to reverse his own judgment.' "

In *Hobbs v. Greifenhagen,* 91 Ill. App. 400, cited in the *Hulse* case, it was said that the rule that a moral obligation would support a subsequent promise and constitute a legal consideration is limited to cases where the moral duty was once a *legal* one. The court there said (p. 402): "It is clear, however, whatever view may have been previously entertained, that the latest expression of the Supreme Court limits the doctrine that a moral obligation will support a subsequent promise, to cases where the moral duty was once a legal one." In the *Hobbs* case the court also quoted (p. 402) from the case of *Spear v. Griffith,* 86 Ill. 552, the following: "Whether out of this arose a legal obligation upon the father to pay for the deficit, it is not necessary here to inquire. A moral obligation was beyond all doubt thus created. This moral obligation the vendor recognized in his life, and in consideration thereof promised appellee to make to him compensation out of his personal estate. The promise created a legal obligation, which appellee is entitled to enforce."

In *Honeyman v. Jarvis,* 79 Ill. 322, cited in the *Hulse* case, where the court was considering the question

whether the agreement which arose out of a compromise of the doubtful right was based on a real consideration, it was held that the real consideration which each party receives under a compromise was not a sacrifice of the right claimed, but the settlement of a dispute and the abandonment of the claimed right, and the fact that it later turned out that the party had in reality no claim was immaterial. The court there said (p. 322): "The compromise of a doubtful right, though it afterwards turns out the right is on the other side, where there is neither actual nor constructive fraud, and the parties act in good faith, with full knowledge of the facts, is a sufficient consideration to support a promise."

In the case at bar defendant *prima facie* was under legal duty to return the bond upon payment by plaintiff of the indebtedness. It was unable to do so. Plaintiff waived the right to obtain the bond at the time he paid his debt, in consideration of which defendant promised in writing to procure a duplicate bond for plaintiff or to pay the face of the bond. And the fact that it might be that defendant was not liable for the bond because its place of business had been burglarized through no negligence on its part, would not render the agreement without consideration.

Defendant contends that the letter or agreement of October 1, 1931, was inadmissible because the copy attached to plaintiff's statement of claim as an exhibit showed that the letter was signed by defendant by Henry Crown, while the letter offered in evidence was signed by defendant by Irving Crown. This objection is frivolous. The letter is signed by defendant. Moreover, counsel for plaintiff stated that the signature of the original letter be read as "Henry" in place of "Irving." There is no merit in this contention.

Defendant also contends that plaintiff's position that he is entitled to have judgment entered in this court in

his favor for the face of the bond plus interest is untenable because plaintiff did not prove any damages; that there was no evidence offered as to the value of the bond. We think this contention cannot be sustained. The face of the bond was for $1,000 and interest at 6%, and in the written agreement of October 1, 1931, defendant stated, ''We hereby guarantee to either secure a duplicate of said bond which has been lost or to secure the payment to you of the amount of said bond upon its maturity. This bond we have been advised matures on 12/31/32.'' Defendant having agreed to secure a duplicate of the bond or to pay the amount of the bond, is bound by its agreement. The defense sought to be interposed is unconscionable and wholly without merit.

The judgment of the municipal court of Chicago is reversed and judgment will be entered in this court in favor of the plaintiff and against the defendant for the amount of plaintiff's claim, $1,452.

*Judgment reversed and judgment in this court.*

McSURELY, J., concurs.

MATCHETT, P. J., dissents.

MR. PRESIDING JUSTICE MATCHETT dissenting: I dissent from the judgment of the court. However, I agree that the evidence shows the bond was not stolen. The promise of defendant was:

''We hereby guarantee to either secure a duplicate of said bond which has been lost or to secure the payment to you of the amount of said bond upon its maturity. This bond we have been advised matures on 12/31/32.''

Defendant did not find the lost bond and did not secure a duplicate. The face value of the bond was $1,000. It drew interest at six per cent per annum

from December 1, 1927. On these facts plaintiff is given judgment for the sum of $1,452, the face amount of the bond with interest. There is no proof in the record that the bond was worth anything. There is no proof of how much it would have cost to obtain a duplicate as agreed. Under the statute plaintiff can still sue on the bond. (See Illinois State Bar Stats. 1935, ch. 98, ¶ 15, section 14; Jones Ill. Stats. Ann. 89.015.) The only damage which has actually been sustained is what it will cost to procure an indemnified bond as provided by the statute. Under the circumstances I think the amount of the judgment is unconscionable. The agreement (assuming a valid consideration) was one in the nature of the payment of a penalty, and only actual damages should in my opinion have been allowed.