Oscar Heyman and Brothers, Inc., Appellee, v. Marshall Field and Company, Appellant.

Gen. No. 40,583.

Opinion filed October 3, 1939.

WILSON & McILVAINE, of Chicago, for appellant; J. F. DAMMANN, SIDNEY K. JACKSON and WILLIAM R. DICKINSON, JR., all of Chicago, of counsel.

BELL, BOYD & MARSHALL and SEYMOUR M. LEWIS, all of Chicago, for appellee; EARL K. SCHIEK, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover $8,500, the value of a piece of jewelry it had delivered to defendant and which had not been returned or paid for. The case was tried before the court without a jury, there was a finding and judgment in plaintiff's favor for the amount of its claim and defendant appeals.

The record discloses that plaintiff was engaged in the jewelry business in New York City, and from time to time over a period of years had been selling jewelry to defendant which sold such jewelry and other merchandise in its retail store in Chicago. December 8, 1936, Mr. George, an employee of defendant in Chi-

cago, telephoned plaintiff in New York, talking to
Nathan Heyman, plaintiff's representative. Plain-
tiff's version of this conversation is that Mr. George
said defendant, Marshall Field & Company, had a cus-
tomer interested in an exceptionally fine large cat's-
eye brooch, who would be in its store in the morning to
see such brooch, and defendant wished to obtain the
brooch from plaintiff; that Heyman said plaintiff had
such a brooch in Chicago and he would have it sent
over to Mr. George "on memorandum immediately";
that Mr. George said "That would be fine." Defend-
ant's version of this conversation is that Mr. George
told Mr. Heyman that Marshall Field & Co. had a cus-
tomer for such a brooch, that the customer would be
in New York and would call on plaintiff within the next
day or two, and for plaintiff to sell the brooch to the
customer. Mr. Heyman testified to plaintiff's version
of this conversation; but since Mr. George died prior
to the trial defendant's version of it could not be
directly proved.

The evidence further shows that the next morning,
December 9, 1936, Leon Carteaux, a retail jeweler at
55 E. Washington street, Chicago, received a letter
from plaintiff inclosing a memorandum requesting
Carteaux to go to the Drake hotel in Chicago, there
obtain the brooch and deliver it to Mr. George in
Field's store. Carteaux obtained the brooch and be-
tween 11:30 and 12 o'clock on the morning of Decem-
ber 9th delivered it to Mr. George as directed together
with the memorandum inclosed in the letter. What
was said at the meeting between George and Carteaux
was excluded because of the death of Mr. George.

The memorandum was on one of plaintiff's printed
blanks, addressed in typewriting to Marshall Field &
Company and dated December 8. The printed part is
as follows: "The goods described and valued as below
are sent to you for your examination only at your own
place of business. They remain our property to be

returned on demand. Until the goods are actually received by us, they are at your risk from all hazards. Possession of the goods described below under the terms of this agreement in no way constitutes you our agent or factor. The receipt and retention by you of the goods described below is your acceptance of the terms and conditions of this agreement which is the entire agreement in respect to such goods and may not be varied by any oral statements, prior course of dealing, or custom in the trade.'' Following this printed matter appears in typewriting, ''1 Plat. Baguette Diamond Catseye Brooch #17239 $8500.00.''

Margaret Strasser, called by defendant, testified she was employed by defendant and that her duties were to keep a record of the diamond stock; that shortly before noon on December 9th she received the cat's-eye brooch from Mr. George, but on plaintiff's objection she was not permitted to state what Mr. George told her. She further testified that the brooch was wrapped in tissue paper; that she opened the package, looked at the brooch and put it in the safe; that shortly after noon Mr. George came to her, and she took the brooch out of the safe, wrapped it up and took it down to the value room in the subbasement of Field's store for the purpose of having it sent by express to plaintiff at its New York place of business; that she made out a memorandum—which is in evidence—from defendant to plaintiff, charging plaintiff with the value of the brooch; that at the bottom of this document she wrote in a blank space that the reason for the charge was ''Sent to us by mistake.'' Upon objection of plaintiff these quoted words were stricken by the court. Miss Strasser testified that what she did in this connection was the usual custom in such cases.

The evidence further shows that about 4:30 o'clock on the afternoon of December 9th one of defendant's employees in the value room noticed a certain package was missing; an exhaustive investigation and search

were immediately made and it was discovered that four other packages were missing. No packages were sent out of the room between 1:00 p. m. and the discovery of the loss. Defendant's employees were questioned by house detectives and city policemen. The next day, December 10th, it was discovered that the other missing articles were four watches in separate packages and one package from the jewelry section, but it was not until several days later that defendant learned that the brooch was in one of the missing packages. It is conceded that defendant made every effort to locate the brooch but was unsuccessful.

The evidence further shows that the value room in the subbasement was about 15 feet by 20 feet, that it had an opening about 4 feet wide where packages were received; that it had two doors, one of which went into an adjoining room known as the special delivery room, where six or seven persons worked, and these employees went back and forth between the two rooms at different times as business required; the other door opened into the subbasement and the locks on these doors were spring locks which opened from the inside, into the delivery department in the subbasement, where about 200 persons worked. "The brooch was kept in an open container placed along the south wall of the value room." The merchandise which passed through the value room consisted of jewelry, small radios, shotguns, revolvers and a number of other items.

The complaint was in six counts. At the close of the evidence, on motion of defendant, the court found in favor of defendant as to 4 of the counts; overruled the motion as to the remaining 2 counts, and gave judgment for plaintiff on those 2 counts.

In the view we take of the case it is unnecessary to discuss the allegations of the counts except to say that one of them charged defendant was a bailee of the brooch and that it was guilty of negligence whereby

the brooch was lost to plaintiff. The court found against plaintiff on this count, holding that defendant was guilty of no negligence; on a cross appeal plaintiff contends the court was in error as to this count because the evidence shows defendant was guilty of negligence.

Plaintiff contends the printed memorandum delivered to Mr. George by Mr. Carteaux, plaintiff's representative, which we have quoted, and what was done under it constitute a contract; that since defendant "breached its contract in that it did not return the brooch on demand" as it stated in the memorandum it would do, it was liable; and that it was liable for the further reason that the memorandum provided that "until the goods are actually received by us, they are at your risk from all hazards." There is a great deal of argument by counsel for both sides as to whether this memorandum and what was done under it constituted a contract between the parties. The only evidence as to what was done by Mr. George at the time he was given the brooch and memorandum was, as testified by Mr. Carteaux, that Mr. George looked at the memorandum. Without going into the question in detail we think it clear that the handing of the memorandum and the brooch and what was done at the time did not constitute a contract between the parties. We think the evidence is wholly insufficient to show that defendant agreed to the terms of the memorandum. *Maynard v. James,* 109 Conn. 365.

Defendant contends the court erred in permitting the witness, Heyman, to testify as to the long distance telephone conversation he had with Mr. George, since the latter died prior to the trial; that the court erred in striking from the memorandum prepared by Miss Strasser (which she made as a preliminary to returning the brooch to plaintiff in New York) the words "Sent to us by mistake." And plaintiff contends the court erred in refusing to allow to be read in evidence the deposition of Herman Arnold, an employee of de-

fendant at the time in question, taken by plaintiff before the trial; that the court erred in refusing to admit in evidence a certified copy of the conviction of one of defendant's employees who was working in the value room at the time in question, which conviction took place before he was employed by defendant. In the view we take of the case we think it unnecessary to pass on all these contentions except to say that the words written on the memorandum by Miss Strasser were, we think, clearly admissible as a part of the transaction as tending to show the intention of defendant in what was being done with the brooch, for we are of opinion that in any view of all the evidence defendant is liable because of its negligence in handling the brooch. *Evans v. Williams,* 232 Ill. App. 439; *Maynard v. James,* 109 Conn. 365; *National Liberty Ins. Co. of America v. Sturtevant-Jones Co.,* 116 Ohio St. 299; 6 Amer. Juris., sec. 224.

Before discussing these authorities we think we ought to say that the argument made by counsel for defendant (to the effect that where a bailor proves he has delivered goods to the bailee and they are not returned on demand, the law presumes negligence on the part of the bailee unless he shows that the goods were lost, stolen or destroyed by fire, and that if the bailee makes such proof then the burden of showing negligence on the part of the bailee is on the bailor) is not the law. In such case the bailee, before he is relieved from liability, must show that the loss, theft or destruction by fire was not the result of any negligence on his part; (*Clemenson v. Whitney,* 238 Ill. App. 308; *Byalos v. Matheson,* 243 Ill. App. 60, affirmed in 328 Ill. 269; *Till v. Material Service Corp.,* 288 Ill. App. 103; *Lindor v. Burns,* 292 Ill. App. 201) although we might say there are a number of authorities from other States and some opinions of other Appellate Courts of this State sustaining defendant's contention.

In the *Clemenson* case this court reviewed the authorities and held that a bailor suing for the value of property lost must in all cases prove that the bailee was negligent; but that when he shows the goods intrusted to the bailee's care were not delivered upon demand, he has made out a prima facie case or created a presumption of negligence which the bailee may overcome by offering evidence showing he was not negligent. In sustaining this presumption we there quoted from *Miles v. International Hotel Co.*, 289 Ill. 320, and also from *Schaefer v. Washington Safety Deposit Co.*, 281 Ill. 43; *Cumins v. Wood*, 44 Ill. 416, and other authorities, refused to follow *Nichols v. Union Stock Yards & Transit Co.*, 193 Ill. App. 14, and said (p. 315) : "The fallacy of such a doctrine seems apparent. Why should the bare showing that the loss of the bailor's goods was through a robbery of the bailee's premises or their destruction by fire, 'prima facie exonerate' the bailee when it may well be that a loss from either of these causes may have been due directly to the carelessness and negligence of the bailee himself?" We then discussed a number of other authorities and continuing said (p. 320) : "Of course the burden of proof is on the plaintiff to prove his or her case, and it remains there throughout the trial and never shifts to the defendant. That is true on the issue of negligence in a bailment case. But when the plaintiff has made out a prima facie case, as is done in a bailment case merely by showing delivery of the bailed goods to the bailee and failure of the latter to return them on demand . . . then the burden of proceeding with the evidence falls on the defendant and remains there until the plaintiff's prima facie case is overcome. The real question is, *What must the defendant show*, in order to overcome the prima facie case of negligence made out by the plaintiff? Is it sufficient to show the bare fact that the bailed articles have been burned up or stolen while in the bailee's possession? Obviously not. They

may have been lost in either of those ways by reason of the gross negligence of the bailee himself or of his servants. If the bailed articles have been burned up or stolen while in the bailee's possession, the prima facie case made out by the plaintiff's proof that the bailee has failed to return the articles upon demand is not met or overcome unless the bailee shows that the fire or robbery was not due to his carelessness or that he has exercised the degree of care called for by the nature of the bailment."

And in the *Byalos* case (243 Ill. App. 60) in passing on the same question we followed the *Clemenson* case and granted a certificate of importance in which we certified to the Supreme Court that one of the questions involved was, "On whom is the burden of proof where suit is brought by the bailor against the bailee for failure to return the bailed article when the defendant interposes as a defense that the goods have been lost, stolen, or destroyed by fire?" And the rule announced by us in that case was affirmed by the Supreme Court in 328 Ill. 269. Subsequently we again announced the same rule in *Till v. Material Service Corp.*, 288 Ill. App. 103. To the same effect is the holding in *Lindor v. Burns*, 292 Ill. App. 201. So it would seem that the question ought to be settled and put at rest.

In *Evans v. Williams*, 232 Ill. App. 439, suit was brought by the owner of an automobile he had placed in defendants' garage for safe keeping, charging that defendants failed in this respect. One of defendants' employees took plaintiff's car out of the garage for a "joy ride" and wrecked it by running into a freight train. It was contended defendants were not liable for the damages caused to the automobile through the wrongful act of their employee because the employee when he took the car did so without authority and was acting wholly outside the scope of his employment. We held this contention untenable and said (p. 442): "It is well established that the bailee is not an insurer

and is liable only for the exercise of ordinary care in protecting the property intrusted to him, but it does not follow that the limitations on liability for a servant's negligence, in the usual action by a third party sounding in damages for tort alone, should be extended to an action for breach of a contract of bailment. In bailment the contract is in its nature a direct and personal obligation by which the bailee undertakes personally to keep safely the property committed to his care. It is an obligation from which he cannot relieve himself without the other's consent. *Jacobs v. Grossman,* 310 Ill. 247. The actual work of guarding the property may be delegated to an employee, and in the customary way of conducting many businesses this must be done during certain hours of the day, but the bailee is not thereby relieved from the personal obligation of his contract. An employee to whom such duty is delegated stands in the place of his employer and any negligence of this employee in protecting the property is the negligence of the employer, who can be made to respond in damages caused thereby. Any other rule would have a tendency to tempt a bailee to lessen his personal liability for damages by delegating to irresponsible servants the care of the property. This would be unjust to the bailor as increasing the risk to the property 'and decreasing his chances of obtaining adequate compensation for damages thereto. The primary and essential object of this contract of bailment was the safety of the automobile, and no rule of law should tend to diminish this by putting a premium on lack of personal attention.''

In *Maynard v. James,* 109 Conn. 365, suit was brought to recover damages for injuries to plaintiff's automobile alleged to have been caused by the failure of defendants, as bailees for hire, to exercise ordinary care. Plaintiff had judgment, which was affirmed on appeal. One of defendants' employees took the car out of defendants' garage and wrecked it by driving it

against a wall and a telephone pole. The court said (p. 367) : "The argument of the defendants is largely based upon the thesis that they are not liable for the negligence of the helper because at the time of the accident he was not acting within the scope of his employment. However that may be, their contention overlooks a clear breach of duty which fastens an unquestionable liability upon them. . . . When the plaintiff left the car in the garage the defendants, as bailees for hire, assumed the obligation not only to use due care in the performance of the services required, but to keep it in their garage . . . for redelivery to the plaintiff when he should come for it. . . . The driving of the car out of the driveway into the street and its subsequent operation was a wholly unauthorized use which, had defendants done it themselves, certainly would have constituted a clear breach of duty. . . . [p. 368.] This duty of the defendants was contractual in its nature; it required performance, and while no doubt they might delegate that performance to another, for a breach of it, whether by themselves or by that other, they would be liable." The court then discusses with approval *Corbett v. Smeraldo,* 91 N. J. L. 29, and quoted the following from that case: "We think this case does not involve the question of the master's responsibility for the tortious acts of his servant. It involves rather the question of the master's liability for breach of his own contract. . . . What were the terms of the contract? Those terms are rarely expressed at length. Much must be left to implication and be determined in accordance with the business usages and customs of the times. . . . The jury could hardly avoid the inference that the automobile was left with the defendant for storage in his garage. Storage involved keeping the automobile there and not permitting it to go out without the plaintiff's authority. If the defendant chose to intrust that duty to his night man, he was liable, not because the night man was neg-

ligent, but because the defendant himself had been guilty of a breach of his contract of storage. . . . There was a breach of the contract to store as soon as the automobile was taken out of the garage. For what subsequently happened, the defendant might or might not be liable under the rule of *respondeat superior.*" The court then refers with approval to *Evans v. Williams,* 232 Ill. App. 439. To the same effect was the holding of the Supreme Court of Ohio in *National Liberty Ins. Co. of America v. Sturtevant-Jones Co.,* 116 Ohio St. 299.

After stating the rule announced in the three cases last mentioned, it is said in 6 Amer. Juris., sec. 224, p. 309: "The foregoing reasoning has likewise been applied in a number of the more recent decisions in which a bailee has been held liable for loss of property through the theft of his employee." See also *Hasbrouck v. New York C. & H. R. R. Co.,* 202 N. Y. 363, 374. If we assume that the bailment in question was gratuitous, defendant was bound to take reasonable care to protect plaintiff from loss. And reasonable care in such a case is such care as a bailee is bound to exercise in the preservation of property intrusted to it, and such as every prudent man takes of his own goods of like character. *Miles v. International Hotel Co.,* 289 Ill. 320; *Transcontinental Ins. Co. v. Rosenbloom,* 274 Ill. App. 341.

In the instant case the brooch was lost, misplaced or stolen while in the possession of the defendant, and under the authorities above cited and in view of the evidence we have set forth, we think defendant was guilty of negligence and that the finding of the trial judge to the contrary is against all the evidence. The trial judge in entering judgment for plaintiff reached the right conclusion, and for the reasons stated the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.